Felicia GARY, Appellant,

v.

HERITAGE NATIONAL HEALTHPLAN SERVICES, INC., Appellee.

No. 91–137.

Court of Appeals of Iowa.

March 24, 1992.

Thomas Mann, Jr. of Mann & Mann, Des Moines, for appellant.

Jim D. DeKoster of Swisher & Cohrt, Waterloo, for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

SCHLEGEL, Judge.

Felicia Gary, a black female, was hired in January 1986 as a full-time mail clerk by Heritage National Healthplan Services, a health maintenance organization. The mail clerk job is the entry level position in Heritage's claim department.

When Gary was hired, there was one other mail clerk. In accordance with company practice, Gary was hired on a ninety-day probationary basis. During that first ninety days Gary had numerous absences. In June 1986 Gary was placed on probation, this time for performance deficiencies and absenteeism. In July 1986 the other mail

clerk was promoted to claims processor, and Deb Nagle, a white female, was hired as mail clerk. Heritage created a new entry level position of drug clerk in March of 1987. Teresa Buszka, a white female, was hired for that job. In June 1987 Heritage promoted Nagle to claims processor. Gary had expressed an interest in that job. Gary then filed a race discrimination complaint with the Waterloo Human Rights Commission. Lea Bryant, a black female, was hired for the open mail clerk position. In November 1987 Heritage promoted Buszka, the drug clerk, to claims processor. Gary had also shown her interest in this processor position. Gary then amended her civil rights complaint to allege she had been denied promotion in retaliation for filing her original charge.

In March 1988 Heritage promoted Gary to claims processor. In early June 1988 Heritage felt Gary was not progressing well in her training, and she was placed on probation. While on probation, testimony shows she made little progress. Gary was terminated on June 28, 1988. Gary amended her charge of discrimination to allege discrimination and retaliation in her termination. In January 1989 Gary filed a petition in the district court seeking relief from Heritage. The case was tried to a jury beginning March 13, 1990; the jury returned its verdict in favor of Heritage on all counts. Following entry of judgment and rulings on posttrial objections, Gary filed this appeal. Our scope of review is on assigned error only. Iowa R.App.P. 4.

## I.

■ First, Gary contends the court erred in denying her motion for new trial based on the alleged failure of Heritage to produce documents. Specifically, she claims Heritage failed to (1) supply performance evaluations of its employees Deb Nagle and Teresa Buszka for the year 1989 and (2) produce a transcribed copy of a tape recording of a meeting with Waterloo Human Rights Commission staff made by Heritage's affirmative action coordinator. The trial court has wide discretion in its rulings on discovery issues and will be reversed only when an abuse of discretion is

found. *Farnum v. G.D. Searle & Co.*, 339 N.W.2d 384, 389 (Iowa 1983).

In response to Gary's request for production of documents on March 8, 1989, Heritage filed its response on April 5, 1989, and provided Gary with supplemental documents on March 3, 1990. The civil trial setting conference memorandum and trial notice of September 6, 1989, provided "discovery shall be completed by February 15, 1990. (Motions that require a response from an opposing party shall be filed so that the response is due before the discovery deadline.)" On February 5, 1990, Gary served requests for admissions on Heritage. Heritage filed an objection and a motion for protective order on March 2, 1990, on the grounds the requests were untimely under the court's scheduling order. Gary then filed a motion for an order to determine the sufficiency of Heritage's responses or for an order compelling responses. The court denied Gary's motion and granted Heritage's motion for protective order with respect to the requests for admissions. Gary filed a motion for continuance, based in part upon Heritage's alleged failure to produce documents, on March 7, 1990. This motion was overruled.

We find the court properly overruled Gary's motion for a new trial. Gary never filed a motion to compel discovery nor a motion for discovery sanctions with respect to Heritage's alleged failure to respond. *See* Iowa R.Civ.P. 134. This issue was alluded to only in her motion for continuance. The trial court properly determined in its ruling on motion for continuance:

> This court is not in a position to determine whether Defendant has complied with Plaintiff's Motion to Produce Documents or not. Plaintiff has not filed a motion to compel production or for sanctions against Defendant for failure to produce any documents. At this stage it appears that this may be a matter that can only be resolved during the course of a trial if a motion for sanctions is made.

At trial it was determined, in the absence of any motion to compel or for sanctions by Gary, any dispute concerning documents

not produced in discovery would come up at such time as they might be offered in evidence. No such documents were offered.

Gary's requests for discovery were untimely and thus were properly overruled. In addition, we find the 1989 evaluations of Nagle and Buszka were irrelevant. Gary's termination occurred on June 28, 1988. The transcribed copy of the meeting was placed in Heritage's affirmative action director's file regarding Gary's discrimination complaint. This statement was not in Gary's personnel file and was, therefore, not within the scope of her request. The court correctly denied Gary's motion for a new trial.

## II.

■ Second, Gary claims the court erred in denying her motion to determine the sufficiency of Heritage's responses to requests for admissions. She believes the court should have ruled Heritage was estopped by its own conduct from asserting the February 15 deadline protected it from responding to the discovery requests. The court, ruling on Gary's posttrial motion, stated:

> The court, rather than ruling on the merits of those contentions, instead denied them because the pretrial order had required that all discovery be completed by February 15, 1990. The pretrial order provided that if the discovery required a response from the opposing party, then the discovery shall be filed so that the response is due before the deadline. The court concluded that this pretrial order precluded consideration of the Plaintiff's contentions concerning the Defendant's failure to submit to discovery because the Plaintiff's requests for discovery were untimely.

■ The district court has wide discretion in its rulings on pretrial deadlines and will be reversed only for an abuse of such discretion. *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989) (citation omitted). In addition, a court enjoys broad latitude in interpreting its own prior order. *In re Estate of Roggentien*, 464 N.W.2d 896, 898 (Iowa App.1990) (citing *Thomas v. Minner*,

340 N.W.2d 285, 286 (Iowa 1983)). We determine the court did not abuse its discretion in interpreting its scheduling order. The court properly overruled Gary's motion to determine the sufficiency of Heritage's responses.

## III.

■ Third, Gary argues the court erred in admitting evidence of her academic grades. The trial court's determination of relevancy will be reversed only upon a showing that its discretion has been abused. *Tratchel v. Essex Group, Inc.*, 452 N.W.2d 171, 178 (Iowa 1990) (citing *State v. Gordon*, 354 N.W.2d 783, 784 (Iowa 1984)). Gary states no inquiry into her background was made when deciding whether to hire or promote her. We determine, however, Gary's academic record was relevant to her ability to perform her job at Heritage. The court did not abuse its discretion in admitting the evidence.

## IV.

■ Fourth, Gary contends the court also erred in refusing to instruct the jury on the definition of the term "pretext." Gary wanted an instruction, based on *State v. Ball*, 27 Neb. 601, 604, 43 N.W. 398, 399 (1889), to define "pretext" as follows:

> The term "pretext," as used in these instructions, refers to the stating or assignment of a false reason or motive for the action(s) taken to cover for the real reason or motive. It refers to the use of a reason alleged for justification for action(s) taken, but which is only so in appearance.

The court refused to give the above instruction and instead defined pretext by instructing the jury:

> If the Defendant has stated a legitimate non-discriminatory reason for their [sic] actions, then the Plaintiff may still recover if she proves that the Defendant's reasons were pretextual, either by:
>
> (a) Showing that a discriminatory intent prompted the Defendant's actions; or,
>
> (b) Showing that the Defendant's stated reasons for their [sic] treatment of

the Plaintiff are unworthy of credence or belief.

If the Plaintiff has established that the Defendant's stated reasons were pretextual, then Plaintiff is entitled to recover in some amount. If, however, the Plaintiff has failed to establish that the Defendant's stated reasons were pretextual, then your verdict would be for the Defendant.

We find the submitted instruction does set forth the law accurately and fairly. *See State v. Savage*, 288 N.W.2d 502, 508 (Iowa 1980). A court is required to give a requested instruction only when it "states a correct rule of law having application to the facts of the case and the concept is not otherwise embodied in the other instructions." *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 868 (Iowa 1989). In addition, error in giving or refusing to give an instruction does not require reversal unless the error is prejudicial. *Id.* (citation omitted). The court chose not to use a possibly confusing definition from the *Ball* opinion, a case involving criminal prosecution for violation of liquor laws. The court instead defined pretext by using language from Iowa employment discrimination cases, *Hy–Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n*, 453 N.W.2d 512, 517 (Iowa 1990), and *Hamilton v. First Baptist Elderly Housing Found.*, 436 N.W.2d 336, 338–39 (Iowa 1989). The instructions as given were sufficient and not misleading to the jury.

## V.

Fifth, Gary claims the court erred in failing to give her requested jury instruction on job qualifications. She sought the following instruction:

You are instructed that an inference of a discriminatory motive arises as a matter of law where the plaintiff meets the objective qualification for the job.

You are also instructed that the violation by an agent of an employer's rules and regulations may be evidence of intentionally discriminatory conduct.

We believe the instruction requested by Gary is only a partial statement of the law.

Gary's requested instruction only requires that she prove a prima facie case. A complete and proper instruction on the matter of qualification would also state the employer has discretion to choose among equally qualified candidates, provided the decision is not based on unlawful criteria. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677–78 (1973). We affirm the trial court's refusal to give the requested instruction. *See Kemp v. Creston Transfer Co.*, 70 F.Supp. 521, 533 (N.D. Iowa 1947) (if any part of a requested instruction is improper, it should not be given).

## VI.

Sixth, Gary argues the jury's verdict was not supported by substantial evidence. We disagree. We note this case was tried prior to *Smith v. ADM Feed Corp.*, 456 N.W.2d 378, 384 (Iowa 1990), in which the supreme court held there was no right to a jury trial in cases tried under Iowa Code chapter 601A. The jury's findings here are binding if supported by substantial evidence.

In order to prevail in a discrimination case, the employee must establish a prima facie case of intentional discrimination by a preponderance of the evidence. *Hy–Vee Food Stores*, 453 N.W.2d at 516. An employee establishes a prima facie case by showing: (1) she belonged to a protected group; (2) she made application and was qualified for a job for which the employer was seeking applicants; (3) she was rejected; and (4) the position remained open and the employer continued to seek applicants with similar qualifications. *Id.* Once the prima facie case is established, a presumption arises that the employer discriminated against the employee. *Id.*

Next the employer must introduce evidence to rebut the presumption of discrimination. *Id.* at 517. The employer does so by producing evidence that the employment action in question was taken for a legitimate, nondiscriminatory reason. *Id.* Once the employer does this, the employee has the burden to show the employ-

er's proffered reason was not the true reason for the employment decision. *Id.* The employee may directly persuade the fact finder that a discriminatory reason more likely motivated the employer or may indirectly show the employer's proffered reason is not worthy of belief. *Id.* In all stages, except for the rebuttal of the presumption of discrimination, the burden of persuasion remains with the employee. *Id.*

We find there was substantial evidence to support the jury's verdict in favor of Heritage. In Gary's first three months as a mail clerk she had problems with absenteeism which adversely affected her training and job performance. The first promotion to claims processor was given to Nagle instead of Gary because Nagle had dealt with the same type of claims while working in physician's offices for over six years. Evidence shows Buszka was promoted to the next claims processor job instead of Gary because there were no problems with Buszka's job performance and she was a quick learner. Prior to initially being hired by Heritage, Gary had enrolled in various medical courses at Hawkeye Institute of Technology, but did not finish any of the courses. She received grades of either failure or withdrawal for all of these courses.

Heritage decided to hire another claims processor. At that time, the other mail clerks were very inexperienced and there were no qualified outside applications on file. Because Heritage knew Gary wanted the job, it decided to give her a chance. Once Gary was finally promoted to claims processor, she did not progress well. Her supervisors testified procedures were repeatedly explained to Gary, and either she did not comprehend or she did not care. In the past it took no more than ninety days to train a new claims processor. Gary was placed on probation after four months because she had not completed her training, was not understanding the job, and was repeating errors.

Based on the evidence, the jury found Gary was not discriminated against because a position she was allegedly qualified for was given to a white employee. In addition, the evidence shows Gary was trained in the same manner as white employees. The jury found Heritage stated a legitimate, nondiscriminatory reason for its actions, and that Gary failed to prove Heritage's stated reasons were pretextual. We determine the jury's verdict should stand.

## VII.

Finally, Gary claims the jury verdict was radically inconsistent with the evidence of retaliation. To have a successful retaliation claim, Gary must first establish a prima facie case of retaliatory discharge by proving: "1) she was engaged in statutorily protected activity, 2) she suffered adverse employment action, and 3) a causal connection between the two." *Hulme v. Barrett*, 449 N.W.2d 629, 633 (Iowa 1989) (citation omitted). If the employee has made a prima facie case of retaliatory discharge, the employer must articulate a legitimate, nonretaliatory reason for the action. *Id.* If the employer were to prove sufficient evidence of a reason other than retaliation, the employee could still prevail if she can prove the reason offered was in fact pretextual. *Id.*

The jury found in favor of Heritage on this issue. There was a question as to whether there was any causal connection. In addition, we determine Heritage articulated a legitimate, nonretaliatory reason for the dismissal in that Gary was not satisfactorily performing her job, and Gary failed to prove this offered reason was a pretext. We find the jury's verdict in Heritage's favor is supported by the evidence.

We affirm the trial court in all respects. Costs of this appeal are taxed to Gary.

AFFIRMED.