United States Court of Appeals,

Fifth Circuit.

No. 96-50917.

In the Matter of:  David Marvin SWIFT, doing business as State Farm Insurance Companies, Debtor.

STATE FARM LIFE INSURANCE COMPANY, Appellant,

v.

David Marvin SWIFT, Appellee.

Dec. 8, 1997.

Appeal from the United States District Court for the Western District of Texas.

Before WISDOM, JOLLY and EMILIO M. GARZA, Circuit Judges.

WISDOM, Circuit Judge:

This bankruptcy case presents a complex issue of ownership of causes of action against the State Farm Insurance Co. (State Farm) for its alleged negligence and breach of fiduciary duty that resulted in the loss of a bankruptcy exemption claimed by David Swift, the debtor.  We hold that the causes of action became property of the bankruptcy estate but are exempt under Tex. Prop.Code § 42.0021.  We AFFIRM the district court's decision.

I.

Swift was a State Farm insurance agent who participated in a Keogh retirement plan administered by State Farm.[1]  In 1986,

_____

[1]A Keogh plan is a retirement plan for self-employed individuals that was authorized by the Self-Employed Individuals Tax Retirement Act of 1962.  Bittker and Lokken, *Federal Taxation of Income, Estates, and Gifts* (2d ed.) ¶ 62.2 (1990).  This plan allows the self-employed taxpayer to deduct certain contributions made to qualifying retirement plans from the taxpayer's annual tax return.  It also allows for the deferral of taxes on the

1

Congress substantially revised the federal tax code. As of February 1990, State Farm had not amended its Keogh plan to comply with the new laws. In February 1990, Swift contemplated filing bankruptcy. Fearing that his Keogh plan would not qualify as exempt property under the Texas bankruptcy exemptions, Swift converted his Keogh plan into a self-directed Individual Retirement Account (IRA).

On or about March 1, 1990, Swift filed a voluntary petition for bankruptcy under Chapter 7. Swift elected to take the Texas bankruptcy exemptions.[2] He asserted that his IRA valued at $126,798.02 at that time, was exempt.[3] Two creditors objected. The bankruptcy court found that the IRA was not exempt and, therefore, was part of the estate available for distribution to Swift's creditors.[4] The bankruptcy court also denied discharge of the creditors' claims against Swift because it found that Swift transferred, concealed, or disposed of property within one year of filing bankruptcy with the intent to hinder, delay, or defraud creditors.[5] We affirmed the denial of discharge.[6]

Swift filed the present suit against State Farm in state court

_____

contributions and the gains attributable to the retirement plan until such time as the taxpayer receives a distribution from the plan. *See id.* at ¶ 61.1.1.

[2]*See* 11 U.S.C. § 522(b)(1).

[3]Tex. Prop.Code. Ann. § 42.0021 (West 1997).

[4]*In re Swift,* 124 B.R. 475, 483-86 (Bankr.W.D.Tex.1991).

[5]*In re Swift,* 126 B.R. 725 (Bankr.W.D.Tex.1991).

[6]*In re Swift,* 3 F.3d 929 (5th Cir.1993).

alleging that State Farm is liable for the lost exemption for his IRA under theories of negligence and breach of fiduciary duty.[7] State Farm removed this action to the bankruptcy court. Swift filed a motion to remand the case. State Farm filed a motion for summary judgment, arguing that the causes of action were property of the bankruptcy estate, not of Swift individually. The bankruptcy court denied State Farm's motion.[8] It granted Swift's motion for a partial summary judgment and remanded the case to the state courts. The bankruptcy court stayed its remand order pending the outcome of this appeal. On October 28, 1996, the district court affirmed the bankruptcy court's ruling. State Farm appeals.

## II.

The legal issue that we must decide is whether the causes of action against State Farm are property of Swift as an individual or whether those causes of action belong to the bankruptcy estate. Our answer depends upon an interpretation and application of Sec. 541 of the Bankruptcy Code. This is purely a question of law which we review *de novo*.[9]

## A.

Upon the filing of bankruptcy, Sec. 541 of the Bankruptcy Code creates an estate that consists of "all legal or equitable interests of the debtor in property as of the commencement of the

---

[7]For purposes of this appeal only, we assume that Swift's causes of action are viable.

[8]*In re Swift,* 198 B.R. 927 (Bankr.W.D.Tex.1996).

[9]*See Peaches Entertainment Corp. v. Entertainment Repertoire Assoc., Inc.,* 62 F.3d 690, 693 (5th Cir.1995).

case".[10]   This definition is very broad, and includes causes of action belonging to the debtor at the commencement of the case.[11] Our first task, then, is to determine whether Swift had a property interest in the causes of action against State Farm at the time he filed bankruptcy.   Stated differently, we must determine whether Swift's causes of action had accrued.   To determine this, we look to Texas law.[12]

"The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued."[13]  Swift's causes of action are for negligence and breach of fiduciary duty based upon negligence.   Damages are an essential element of each of these theories.[14]  Therefore, some form of legal injury must occur before these causes of action accrue.[15]  But, it is not necessary to know

---

[10]11 U.S.C. § 541(a)(1).

[11]*Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233, 245 (5th Cir.1988).

[12]"Property interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, 141-42 (1979); *In the Matter of Educators Group Health Trust,* 25 F.3d 1281, 1284 (5th Cir.1994).

[13]*Luling Oil & Gas Co. v. Humble Oil & Refining Co.,* 144 Tex. 475, 191 S.W.2d 716, 721 (1946).  *See also Educators Group Health Trust,* 25 F.3d at 1284;  *General Motors Acceptance Corp. v. Howard,* 487 S.W.2d 708, 710 (Tex.1972).

[14]*See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1991).

[15]*See Lumbermens Mutual Casualty Co. v. Shaw,* 684 S.W.2d 195, 196 (Tex.Ct.App.1984), holding that an insurance company could not appeal the decision of the Industrial Accident Board when the insurance company prevailed before the Board;  *see also Philips v. Giles,* 620 S.W.2d 750, 751 (Tex.Ct.App.1981) dismissing a suit as

immediately the type and extent of that injury.[16] All that is needed is a specific and concrete risk of harm to the party's interest.[17] These rules are well-established. Recent cases applying these rules have muddied the waters, however. The basic problem is that the issue of accrual of a cause of action rarely occurs apart from the issue of when the statute of limitations begins to run for a particular cause of action. These are two separate and distinct issues aimed at very different problems.[18]

The accrual of a cause of action is a concept closely tied to the fundamental purpose of a cause of action—to make an injured party whole.[19] Damages, then, are a prerequisite to a cause of

---

premature after the court found that no damages had occurred.

[16]*Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967).

[17]*Zidell v. Bird,* 692 S.W.2d 550, 557 (Tex.Ct.App.1985).

[18]*See In re Ellwanger,* 140 B.R. 891, 897 (Bankr.W.D.Wash.1992). Although these inquiries are different, it is often necessary to look to state law on the statute of limitations to determine when a cause of action accrues because accrual rarely is discussed apart from the issue of the running of the statute of limitations. When this is the case, the court must be careful to extract accrual principles only, and not principles of discovery and tolling.

Swift suggests that this case is governed by *Lawrence v. Jackson Mack Sales, Inc.,* a case in which the district court applied statute of limitations cases to determine whether a cause of action accrued for bankruptcy purposes. 837 F.Supp. 771 (S.D.Miss.1992), *aff'd* 42 F.3d 642 (5th Cir.1994). Principles of *stare decisis* of course bind this panel to follow previous decisions of other panels of this Court. In *Lawrence,* however, this Court did not consider the issue of when the cause of action accrued because that issue was not raised on appeal. *See* Briefs filed in *Lawrence v. Jackson Mack Sales, Inc.,* No. 94-60006.

[19]"The purpose of actual damages in civil actions is to compensate the injured plaintiff, rather than to punish the defendant. Consequently, a prevailing plaintiff is entitled to

5

action.[20]  Without damages, there is no injury to remedy.

The purpose of statutes of limitation is different:  they bar the litigation of stale claims at a time removed from when the pertinent events occurred.[21]  The concept of accrual is important to the statute of limitations because accrual sets the clock in motion.  But the running of the statute of limitations is influenced by more than just the concept of accrual.  In this connection, to avoid harsh and unfair consequences that may result from the premature running of the statute of limitations, Texas adopted the "discovery" rule.  Under this rule, the statute of limitations does not begin to run until the injured party "discovers" or with the exercise of reasonable care and diligence should have discovered that a particular injury has occurred.[22]  The result is that the statute of limitations may begin to run on a date other than that on which the suit could first be maintained.  A classic example illustrates this.  Consider a case of medical malpractice in which the treating physician has left a dangerous metal instrument inside the body of his patient.  At the time the doctor finishes the surgery, the doctor has completed a tort.  He

---

actual damages that will most nearly put him in the position that he would have been, but for the defendant's negligence." *Deloitte & Touche v. Weller,* 1997 WL 572530 (Tex.Ct.App.1997) (internal citations omitted).

[20]*Lumbermens Mutual Casualty Co.,* 684 S.W.2d at 196.

[21]*Deloitte & Touche v. Weller,* 1997 WL 572530, *4 (Tex.Ct.App.1997).

[22]*Ponder v. Brice & Mankoff,* 889 S.W.2d 637, 641 (Tex.Ct.App.1994);  *Hoover v. Gregory,* 835 S.W.2d 668, 671 (Tex.Ct.App.1992).

6

has violated a legal duty owed to the patient, and the patient was injured by that violation. If the patient instituted suit at this moment, his suit would be viable. The statute of limitations has not begun to run, however. Under the discovery rule, the statute of limitations is tolled until the patient either discovers or should have discovered that an injury has occurred. This example shows that the dates of accrual and the start of the running of the statute of limitations may vary greatly. Unfortunately, many cases applying the principles of the discovery rule are written in terms of accrual.

The blurring of these two issues begins with *Atkins v. Crosland,*[23] a case whose logic and reasoning is sound. In *Atkins,* the Texas Supreme Court addressed the concept of accrual for purposes of the statute of limitations in the context of an accountant malpractice suit. The court began:

> The test to determine when the statute of limitations begins to run against an action sounding in tort is whether the act causing the damage does or does not of itself constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of plaintiff. If the act is of itself not unlawful in this sense, and plaintiff sues to recover damages subsequently accruing from, and consequent on, the act, the cause of action accrues, and the statute begins to run, when, and only when, the damages are sustained; and this is true although at the time the act is done it is apparent that injury will inevitably result.
>
> If, however, the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, even where little, if any, actual damage occurs immediately on commission of the

---

[23]417 S.W.2d 150 (Tex.1967).

tort.[24]

The court reasoned that the causes of action for accountant malpractice were not unlawful in themselves. The decision to use the cash receipts and disbursements method of accounting rather than the accrual method of accounting when preparing tax returns was not one that would result in injury unless something more happened. That additional event was the assessment of a tax deficiency. The causes of action accrued and the statute of limitations began to run when the taxpayer received notification of the tax deficiency.

B.

The "legal injury" principles discussed in *Atkins* are largely an elaboration on the need for damages for a cause of action to accrue. In subsequent cases, however, Texas courts have blended the legal injury analysis into the holding of *Atkins* that the cause of action did not accrue until the assessment of the tax deficiency. A few examples illustrate this point.

In *Hoover v. Gregory,*[25] for instance, the Dallas Court of Appeals addressed the accrual of causes of action for tort and breach of contract resulting from tax shelters that were declared to be shams by the IRS. This inquiry was to determine whether the statute of limitations had run. The court found that it had. It wrote: "Because we determine that the Notices of Deficiency announced facts from which appellants discovered or with reasonable

---

[24]*Id.* at 153.

[25]835 S.W.2d 668 (Tex.Ct.App.1992).

diligence could have discovered their injuries, we conclude that the trial court properly granted summary judgment because each of appellant's claims was barred by the applicable statutes of limitations."[26] That court read *Atkins* "as establishing a general rule that a taxpayer's cause of action accrues on a fact specific basis when he discovers a risk of harm to his economic interests, whether that be at the time of assessment or otherwise".[27] This language, while discussing the concept of accrual, is clearly couched in terms consistent with the discovery rule.

In *Bankruptcy Estate of Rochester v. Campbell,*[28] the Austin Court of Appeals found that a cause of action for accountant malpractice accrued when the taxpayer received a notice of deficiency from the IRS. The court applied the legal injury rule and concluded that the notice of deficiency gave rise to a concrete and specific risk of loss that was actionable. The court explained its reasoning:

> [W]e hold that the formal IRS notice of deficiency triggers the requisite concrete risk of tax liability for purposes of the legal injury rule. Prior awareness of IRS activity, such as a preliminary notice of deficiency, informs the taxpayer of some risk, but the risk is not sufficiently definite or concrete until the IRS has issued its formal notice of deficiency. As a matter of policy, it is important that a taxpayer clearly know the time at which potential causes of action involving tax liability accrue[.][29]

Again, this case is analyzed in terms of discovery of the injury.

---

[26]*Id.* at 672.

[27]*Id.* at 673.

[28]910 S.W.2d 647 (Tex.Ct.App.1995).

[29]*Id.* at 651-52.

Discovery is relevant to the determination of when the statute of limitations begins to run, but it is not an element necessary for the cause of action to accrue for purposes beyond the statute of limitations.

Finally, in *Ponder v. Brice & Mankoff*,[30] the Houston Court of Appeals reached a decision similar to those cases we have just discussed. This case involved a cause of action for legal malpractice stemming from bad advice given in relation to the tax consequences of a partnership. The court found that the causes of action accrued for purposes of the statute of limitations when the taxpayer received the first notice of deficiency from the IRS. Relying upon *Hoover*, the court found that the taxpayer "knew or should have known that there was a risk of harm to his economic interest".[31] This too is language of discovery.

The three cases just cited show a natural tendency to blend the issue of accrual and the start of the statute of limitations because of the luxury of the discovery rule in a statute of limitations case. Even if a cause of action accrued before the receipt of the IRS's notices of deficiency in each of those cases, the discovery rule would toll the start of the statute of limitations until the assessment of the deficiency by the IRS.[32] Those courts did not need to separate the inquiry. In the present

---

[30]889 S.W.2d 637 (Tex.Ct.App.1994).

[31]*Id.* at 643.

[32]*See e.g., Hoover v. Gregory,* 835 S.W.2d 668 (Tex.Ct.App.1992).

10

case, we have neither the luxury nor the margin for error provided by the discovery rule. We are determining when the causes of action accrued for purposes of ownership in a bankruptcy proceeding. The time of discovery of the injury is not relevant to this inquiry. A cause of action can accrue for ownership purposes before the statute of limitations for that cause of action has begun to run. Our focus, then, is upon the moment the injury occurred. The three statute of limitations cases cited are not helpful in this case because of their reliance upon discovery.[33]

C.

In the present case, Swift maintains that his causes of action against State Farm accrued when his creditors objected to his bankruptcy exemption. He argues that he did not suffer any legal injury until this additional event because there was no concrete and specific risk of harm to his economic interests before this point. State Farm maintains that Swift's damages, if any, occurred at the moment his retirement plan failed to qualify as exempt.

From Swift's previous proceedings before this court, we take the following as given: (1) the Keogh plan that Swift participated in until 1990 was not qualified as exempt under the Internal Revenue Code as amended by the Tax Reform Act of 1986 and (2) Swift's IRA was not qualified as exempt under either the Texas

---

[33]Based upon *Atkins* and subsequent cases applying the *Atkins* legal injury rule, Swift's causes of action were viable at the time his creditors objected to his exemption of his IRA. That does not end our inquiry, however, because we must determine whether those causes of action accrued earlier.

11

Property Code or the Internal Revenue Code.[34]  We conclude that Swift suffered damage sufficient to give rise to the current causes of action at the time he converted his Keogh plan to an IRA in 1990.[35]

A retirement account is an unusual creature;  it receives favorable treatment under both the tax code and the Texas Property Code.[36]  Because Swift's retirement plan was defective, Swift suffered damage in at least two different ways:  (1) Swift lost the tax advantages of the Keogh plan and the IRA,[37] and (2) he lost his bankruptcy exemption under Texas law.  If either of these damages occurred pre-petition, the causes of action against State Farm accrued pre-petition.

The lost bankruptcy exemption is easily analyzed so we begin there.  Under the Bankruptcy Code, a claimed exemption is

---

[34]*See In re Swift,* 124 B.R. 475 (Bankr.W.D.Tex.1991).

[35]Swift's causes of action accrued before the filing of his petition in bankruptcy if the cause of action accrued at the time of the conversion.  We need not look back any further in time. Therefore, we express no opinion as to whether Swift's damages occurred before the conversion in 1990.  In determining whether Swift could have maintained a cause of action for State Farm's conduct at any point prior to his filing bankruptcy, we do not consider the effect of the subsequent filing of bankruptcy and loss of the funds from the defective IRA.

[36]*See* 26 U.S.C. § 408;  Tex. Prop.Code. § 42.0021.

[37]In the present action, Swift is seeking to recover for his lost bankruptcy exemption.  He has not sued for lost tax benefits. We must consider the tax consequences anyway.  A cause of action accrues when any damage is suffered, even if the injured party is not seeking recovery for those particular damages.

12

presumptively valid unless a creditor objects.[38]   Only upon objection can the debtor lose his exemption.   Conduct that ultimately results in the loss of an exemption is not unlawful in itself, as referred to in *Atkins,* because something more is needed to bring about the damage.   Just as the tax claim did not accrue in *Atkins* until the deficiency was assessed, a cause of action to replace a lost bankruptcy exemption does not accrue until the creditors object to the exemption.   By necessity, an objection can occur only after the bankruptcy petition is filed.   This damage from the lost exemption, then, is post-petition and the causes of action accrued post-petition unless some other damage occurred before the filing.

In this case, however, we must also consider the tax consequences of the defective retirement plan.   Negligence can result in additional tax liabilities in at least two ways.   First, negligence in the preparation or computation of tax liability can lead the IRS to assess a tax deficiency including interest and penalties.   In this situation, the taxpayer is not injured by being forced to pay his back taxes.   These taxes were already owed to the IRS.[39]   Instead, the taxpayer's injury is the interest and penalties

---

[38]11 U.S.C. § 522(*l* ).   That section provides:

> The debtor shall file a list of property that the debtor claims as exempt under (b) of this section....   Unless a party in interest objects, the property claimed as exempt on such list is exempt.

[39]*See* 26 U.S.C. § 6151 (1997).   "As of a certain date the taxpayer has a duty to file a return for the previous fiscal year and pay the amount of tax due for that year ... the taxpayer ha[s] a positive obligation to the United States;  a duty to pay its

13

that the taxpayer must pay as a direct result of the late payment of his taxes, a payment that is late only because of the negligence in the preparation or computation of the taxpayer's tax liability. In these circumstances, an IRS assessment is a predicate to a finding of a legal injury because, in the absence of the assessment, no penalties or interest are owed.[40] This was the situation in *Atkins,* not the present case.

Damages can also arise from acts of negligence that result in the taxpayer owing additional tax liabilities that would not be owed in the absence of the negligence. No assessment for this liability is necessary because, under the Internal Revenue Code, taxes are owed and payable to the IRS at a given time.[41] A cause

___

tax." *Manning v. Seeley Tube & Box Co.,* 338 U.S. 561, 565-66, 70 S.Ct. 386, 389, 94 L.Ed. 346 (1950). *See also P.H. Glatfelter Co. v. Lewis,* 746 F.Supp. 511, 518-19 (E.D.Pa.1990).

[40] *See, e.g., Atkins v. Crosland,* 417 S.W.2d 150 (Tex.1967) (finding that a taxpayer's cause of action for negligence in the preparation of tax returns did not accrue until that IRS assessed a tax deficiency); *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985) (finding that a cause of action for professional malpractice in the preparation of tax returns did not accrue until the IRS assessed interest and penalties).

[41] In *Moran v. United States,* the Seventh Circuit Court of Appeals summed up the importance of a tax assessment rather succinctly. The Court wrote:

> [A]n assessment is not a prerequisite to tax liability. Though the [taxpayers] make it out to be more, an assessment is only a formal determination that a taxpayer owed money. It is more or less a bookkeeping procedure that permits the government to bring its administrative apparatus to bear in collecting a tax. Indeed, our tax system would function poorly were not most taxes "self-assessed." A formal IRS assessment is an important determination in many cases, and the threat of one is a significant means of maintaining a system of voluntary compliance, but it is neither the beginning nor the end

14

of action for this type of negligence, then, accrues on the date that the tax liability is owed to the IRS. The present case falls in this category. But for the negligence of State Farm, Swift would have no tax liability arising from his retirement plan. That is, without the negligence of State Farm, the gains on Swift's Keogh plan and the IRA would accumulate tax free, and Swift's contributions to the plan would be tax deductible. Because the Keogh plan was defective, however, Swift incurred an additional liability to the IRS due to the taxable nature of the income from the Keogh plan and the IRA. Swift incurred this liability even if he did not know or discover that he owed additional taxes. This is a legal injury that gave rise to a cause of action at least by the time he converted his Keogh plan into the defective IRA.[42] Even though the IRS has not assessed a deficiency for this liability, Swift was injured.[43] We shall not find a lack of injury merely

---

of tax liability.

> 63 F.3d 663, 666 (7th Cir.1995) (citations omitted). This language amplifies the distinctions we draw in the present case. Assessment is an effective tool for notifying a taxpayer of additional tax liabilities. It is a clear signal for when the statute of limitations begins to run. It also creates a concrete and specific risk that penalties and interest will be assessed. An assessment does not create or change the taxpayer's initial tax obligation that was owed, however.

[42]For purposes of this appeal, we have assumed that State Farm could repair the defective Keogh plan by adopting appropriate amendment. At the time the Keogh plan was converted, however, the liability was fixed. *See In re Swift,* 124 B.R. 475, 484 (Bankr.W.D.Tex.1991).

[43]Our decision conflicts with that of the Texas Court of Civil Appeals in Dallas in *Philips v. Giles,* 620 S.W.2d 750 (Tex.Ct.App.1981). *Philips* involved a taxpayer who learned that

15

because the taxpayer may be able to escape liability by continuing to violate the tax laws even if the violation is unintentional and undiscovered.[44]  The amount, if any, that Swift ultimately pays to the IRS is relevant only in the computation of damages.  The causes of action against State Farm accrued pre-petition.

Swift directs our attention to *Swift v. Seidler,* an

she might owe additional taxes on a divorce settlement even though she was previously advised that the settlement would result in no tax liability.  The taxpayer paid the additional amounts even though the IRS had not assessed a deficiency.  Then, she filed suit, attempting to recover the additional taxes she paid due to the bad advice she received regarding the settlement.  The court, relying upon *Atkins v. Crosland,* dismissed the suit as premature. The court wrote:

> Although relator believes the taxes are due, she may be mistaken and, indeed, no tax liability, insofar as we know, may exist.  Relator's cause of action against defendant, and her injury, if any, arise from her tax liability, rather than from the duty to report her income as she believes it to be, accurately.  Since it has not been determined whether relator is liable for the taxes in question, she has not been harmed and, therefore, her cause of action has not accrued.

*Id.* at 751.  Our trouble with this decision is on two levels. First, the court placed the taxpayer in an unfortunate "catch-22".  She could choose to pay the IRS the money she thinks she owes without being able to recover from the party whose acts caused her to owe this liability, or she can deliberately defy the tax code by refusing to pay what she perceives to be her full tax liability.  This is not a fair choice for the taxpayer because, either way, she loses.  We also find the decision troubling in that the court dismissed the suit because of a lack of damages when there was a genuine issue of fact concerning the existence of damages.  As such an early stage, it was premature for the court to make the assumption.

[44]We acknowledge that Swift's defective retirement plan may also result in additional tax consequences.  We need to investigate these no further, however, because our analysis of the accrual of the causes of action against State Farm depends upon a finding of some damage.  It does not depend upon the amount or extent of that damage.  *Atkins,* 417 S.W.2d at 153.

unpublished opinion of this Court, in which we found that Swift's causes of action against Martin Seidler, his attorney, accrued post-petition. In reaffirming our previous decision, we note a few critical distinctions. In the present case, we find that the causes of action accrued pre-petition because there was actual damage from State Farm's conduct before Swift filed for bankruptcy. Swift's causes of action against Seidler did not result in damage before the filing. Assuming that Swift has a viable cause of action against Seidler for malpractice, the attorney's malpractice resulted in damages stemming from the filing of bankruptcy and the loss of the IRA exemption. As we pointed out, this damage is without question a post-petition damage. The loss was not suffered until the creditor's objected to the exemption after Swift filed for bankruptcy. Unlike State Farm's actions, Seidler's conduct did not result in the loss of the tax advantages. The conduct giving rise to the tax losses occurred well before Swift contemplated filing for bankruptcy.

III.

Next, Swift argues that the causes of action against State Farm are themselves exempt property under Texas Prop.Code § 42.0021, the section which exempts qualified retirement accounts from the bankruptcy estate. In previous proceedings before this Court, we established that Swift's IRA was not exempt. Our previous decision did not address the status of any causes of action aimed at replacing the lost IRA. Today, we hold that Swift's causes of action against State Farm to replace the lost IRA are

17

exempt property.

To prevent a down-on-his-luck debtor from becoming destitute, the Texas legislature enacted a scheme of exemptions that limits the ability of creditors to reach certain essential assets of the debtor. The decision to exempt property is an important one, recognizing that the exempt property is vital to the debtor's continued existence. The Texas legislature recognized the importance of retirement accounts and exempted them in Tex. Prop.Code § 42.0021. In addition, the legislature severely limited the circumstances in which a creditor can attach or garnish the proceeds of retirement accounts.[45] Neither provision expressly addresses causes of action arising out of exempt retirement accounts, however. And, we have been unable to find a Texas case that discusses this issue. Therefore, to determine whether the causes of action at issue in this case are exempt, we must look to Texas cases addressing the reach of other exemptions.

Texas courts construe the scope of exemptions liberally, with most doubts about the existence of an exemption resolved in favor of the debtor claiming the exemption.[46] The courts are driven by the purpose and intent of the exemption, not just the plain

---

[45]Tex. Civ. Prac. & Rem.Code § 31.002.

[46]"Exemption statutes have been traditionally construed liberally by [Texas] courts. They are never restricted in their meaning and effect so as to minimize their operation upon the beneficent objects of the statutes, and questions regarding the extent of exemptions are generally resolved in favor of one claiming exemption." *Stephenson v. Wixom,* 727 S.W.2d 747, 749 (Tex.Ct.App.1987) (internal citations omitted).

language of the statutes.[47]  The Texas courts have made this point in numerous cases in which a specific exemption has been extended to include the proceeds from the disposition of exempt property. For instance, an exemption for household furniture included the proceeds from an insurance settlement after the furniture was destroyed,[48] an exemption for one "carriage" included the proceeds paid on an insurance policy after an automobile was damaged,[49] and the homestead exemption included the proceeds paid upon the forced disposition of the homestead as well as a cause of action filed to recover damages on a lost homestead.[50]  One common theme runs through all of these decisions.  The proceeds, insurance, cause of action, etc., are a substitute for the exempt property that is lost.  To be effective, the substitute must be treated as if it were the lost item.[51]  Otherwise, the protection provided by the exemption would be meaningless, and creditors could attack the

---

[47]*See id.* at 749-50.

[48]*Sorenson v. City Nat'l Bank,* 121 Tex. 478, 49 S.W.2d 718, 721 (Tex. Comm. App., Sec. A 1932).

[49]*Willis v. Schoelman,* 206 S.W.2d 283 (Tex.Ct.App.1947).

[50]*In re Osborn,* 176 B.R. 217, 219-20 (Bankr.E.D.Okla.1994).

[51]In Tex. Civ. Prac. & Rem.Code § 31.002, the Texas legislature protected the proceeds of exempt property from the reach of creditors.  That provision provides:

> A court may not enter or enforce an order under this section that requires the turnover of the proceeds of, or the disbursement of, property exempt under any statute, including Section 42.0021, Property Code.

Tex. Civ. Prac. & Rem.Code § 31.002(f).  This statute shows legislative approval of earlier decisions liberally construing the Texas exemptions.

19

unfortunate debtor more effectively than they could the average debtor who is less in need of the protection.

When a retirement account that should have been exempt is lost, the cause of action to replace that account is exempt so that the injured party can be placed in a position that is as near as possible to his original or intended position. The fundamental purpose of a cause of action—to make an injured party whole—dictates this conclusion. State Farm maintains that Swift's causes of action are not exempt, however, because his IRA was defective at the time Swift's creditors objected to the exemption. State Farm's argument fails to account for one critical fact: Swift is seeking recovery for the original acts that made the account defective as well as the eventual loss of the bankruptcy exemption. State Farm cannot escape liability simply because its alleged actions resulted in damage at two separate stages. But for the actions of State Farm, or the failure to act by State Farm, Swift would have a valid, exempt IRA. Swift's causes of action against State Farm, then, are to replace what would have been a valid IRA, not the non-exempt account of which State Farm speaks. As a replacement for exempt property, we hold that Swift's causes of action are exempt property for purposes of his bankruptcy proceedings.

IV.

In conclusion, we find that Swift's causes of action against State Farm accrued before Swift filed his bankruptcy petition because he suffered actual damage before the filing. Those causes

20

of action became the property of the bankruptcy estate under 11 U.S.C. § 541.  But, they are exempt property under Texas Prop.Code § 42.0021. Swift has standing to pursue these causes of action against State Farm. The district court's decision is AFFIRMED.