# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 99-6059NI

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Sharon Red Deer and | * | |
| Lyle Leroy Gilgen | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Sharon Red Deer | * | Appeal from the United |
| | * | States Bankruptcy Court for |
| Debtor-Appellant, | * | the Northern District of Iowa |
| | * | [UNPUBLISHED] |
| v. | * | |
| | * | |
| Donald H. Molstad | * | |
| | * | |
| Trustee-Appellee. | * | |

Submitted: October 29, 1999
Filed: December 7, 1999

Before KOGER, Chief Judge, SCHERMER, and DREHER, Bankruptcy Judges.

DREHER, Bankruptcy Judge

 Debtor-Appellant Sharon Red Deer ("Appellant") appeals the July 20, 1999 order of the bankruptcy court[1] determining two-thirds of the settlement proceeds she received from an employment discrimination claim to be property of the estate and ordering Appellant to

---

 [1]The Honorable William L. Edmonds, Chief Judge, United States Bankruptcy Court for the Northern District of Iowa.

turn over the funds to Trustee-Appellee Donald H. Molstad ("Trustee"). For the reasons set forth below, we affirm.

## I.     FACTUAL BACKGROUND

Appellant filed an application for employment with the Cherokee County Sheriff ("County") for a position as a deputy in December of 1996. A position became available in January of 1997, but the County did not ask Appellant to interview. On February 5, 1997, after Appellant discovered that the County offered the job to another applicant, she filed a complaint against the County with the Iowa Civil Rights Commission, alleging that the failure to interview her amounted to employment discrimination.

Another position became available in February of 1997, and Appellant again was not asked to interview. Two more positions opened in April of 1997. On April 23, 1997, the County sent a letter to Appellant asking her to interview for these positions. Appellant interviewed on April 28, 1997. She received a letter on May 20, 1997, indicating that the County had filled the positions. Meanwhile, on April 23, 1997, Appellant filed a Chapter 7 bankruptcy petition.

On July 1, 1997, Appellant filed a complaint against the County alleging that the County had violated state and federal law by discriminating against her in its hiring decisions on the basis of age, gender, and race. The complaint specifically alleged that the discrimination began on or about January 28, 1997, a date coinciding with the date that the first deputy position was filled. Appellant and the County settled the suit in February of 1999. The County agreed to pay $40,000 to settle all claims "arising out of or in any way relating to [Appellant's] unsuccessful applications for employment." The settlement amount was allocated as follows: (1) $23,000 to Appellant for emotional distress; (2) $3,000 to Appellant for back pay; and (3) $14,000 to Appellant's attorney in payment of attorney's fees and costs.

The Trustee brought an action for turnover of all funds received in the settlement, contending that at least some of the settlement proceeds were attributable to claims that accrued prepetition. Appellant contends that all of the proceeds are attributable to postpetition discrimination. The bankruptcy court found that the Appellant had three

2

separate discrimination claims. Two arose prepetition when the County failed to interview her for the first two openings. The third claim arose postpetition when the County failed to hire Appellant after her interview. Because there was insufficient evidence to determine how to allocate the settlement amount among the three claims, the bankruptcy court attributed equal amounts to each. The court further determined that Appellant would not be required to turn over the funds paid directly to her attorney.[2]  Accordingly, the court ordered Appellant to turn over to the Trustee as property of the estate two-thirds of the settlement proceeds that had been paid to her, which totaled $17,333.32.

## II.    STANDARD OF REVIEW

The Bankruptcy Appellate Panel reviews findings of fact for clear error. Conclusions of law are subject to de novo review.  See Forbes v. Forbes (In re Forbes), 215 B.R. 183, 186-87 (B.A.P. 8th Cir. 1997) (citing O'Neal v. Southwest Missouri Bank (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir. 1997); Natkin & Co. v. Myers (In re Rine & Rine Auctioneers, Inc.), 74 F.3d 848, 851 (8th Cir. 1996); Hartford Cas. Ins. v. Food Barn Stores, Inc. (In re Food Barns Stores, Inc.), 214 B.R. 197, 199 (B.A.P. 8th Cir. 1997)). Whether a cause of action is property of the estate is a question of law subject to de novo review.  See State Farm Life Ins. Co. v. Swift (In re Swift), 129 F.3d 792, 795 (5th Cir. 1997); Brunswick Bank & Trust Co. v. Atanasov (In re Atansov), 221 B.R. 113, 116 (D.N.J. 1998). When a settlement agreement is ambiguous, the intent of the parties is a question of fact reviewed for clear error.  See Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999).

---

[2] The Trustee did not appeal this portion of the bankruptcy court's decision and did not address the issue in his brief. Accordingly, the question of whether the portion of the settlement proceeds paid to the Appellant's attorney constitutes property of the estate is not before this court. See, e.g., Stephenson v. Davenport Comm. School Dist., 110 F.3d 1303, 1306 n.3 (8th Cir. 1997) (issue not raised or briefed by appellee on appeal is waived); Jasperson v. Purolator Courier Corp., 765 F.2d 736, 740 (8th Cir. 1985) (party's failure to raise or discuss an issue in his brief is deemed an abandonment of that issue); Buckeye Gas Prods. Co. v. Rhodes (In re Rhodes), 71 B.R. 206, 208 n.2 (B.A.P. 9th Cir. 1987).

## III. DISCUSSION

Upon the filing of a bankruptcy petition, § 541 of the Bankruptcy Code creates an estate that consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1994). This definition is very broad, see Snyder v. Dewoskin (In re Mahendra), 131 F.3d 750, 755 (8th Cir. 1997), and includes causes of action that are property of the debtor at the commencement of the case. See Whetzal v. Alderson, 32 F.3d 1302, 1303 (8th Cir. 1994); Mixon v. Anderson (In re Ozark Restaurant Equipment Co.), 816 F.2d 1222, 1225 (8th Cir. 1987); Forbes v. Forbes (In re Forbes), 215 B.R. 183, 190 (B.A.P. 8th Cir. 1997); Richardson v. United Parcel Serv., 195 B.R. 737, 739 (Bankr. E.D. Mo. 1996) (applying general rule to an employment discrimination claim).

The nature and extent of the debtor's interest in property are determined by state law. See Mahendra, 131 F.3d at 755; N.S. Garrott & Sons v. Union Planters Nat'l Bank (In re N.S. Garrott & Sons), 772 F.2d 462, 466 (8th Cir. 1985). To determine whether the Appellant had a property interest in the cause of action at the time of the bankruptcy, we must look to whether the cause of action had accrued. See Swift, 129 F.3d at 795. Under Iowa law, a cause of action accrues when all of the necessary elements have occurred. See Slater v. Farmland Mutual Ins. Co., 334 N.W.2d 728, 730 (Iowa 1983). The elements of a prima facie case of employment discrimination under both federal and Iowa law are as follows: (1) the plaintiff is a member of a protected class; (2) she is qualified for the position; (3) adverse employment action was taken against her; and (4) that action occurred in circumstances giving rise to an inference of discriminatory motivation. See Thomas v. Runyon, 108 F.3d 957, 959 (8th Cir. 1997); Gary v. Heritage Nat'l Health Plan Servs., Inc., 485 N.W.2d 851, 855 (Iowa Ct. App. 1992).

Appellant first contends that the settlement proceeds are not property of the estate because the cause of action had not yet accrued at the time she filed her bankruptcy petition. She maintains that, because the County made its final hiring decision postpetition, no adverse employment action had been taken against her prepetition. To the contrary, the failure to hire Appellant for the first two openings was as much of an adverse employment action as the failure to hire her after the interview. Moreover, Appellant's own actions contradict her argument. She filed a complaint with the Iowa Civil Rights Commission after the first hiring

4

decision,[3] and her complaint in District Court alleged that the discrimination began about the time of the first hiring decision. Although Appellant suggests the court should discount those actions, it is clear that at least a portion of her discrimination claim accrued prepetition. Accordingly, some portion of the settlement is property of the estate.

Appellant also contends that the bankruptcy court improperly allocated the proceeds of the settlement agreement. She first asserts that some of the proceeds are attributable to certain concessions on her part, which are found in paragraphs 5 and 19 of the agreement. They provide as follows:

> Plaintiff agrees that she will not encourage or advise any other individuals, group of individuals, associations, administrative agency, corporations, partnerships or any other entities to file or otherwise engage in litigation against Cherokee County in any forum. Plaintiff further agrees that she will refrain from joining, appearing on behalf of or cooperating in any way whatsoever with any individuals or entities in any litigation against Defendant in any forum, except pursuant to a valid subpoena unsolicited by Plaintiff. If Plaintiff becomes an attorney licensed in the state of Iowa, the above portion (paragraph 5) of the Agreement is no longer in effect.
>
> . . . .
>
> Plaintiff agrees to refrain from seeking or attempting to seek employment with Defendant, or any of its agencies, elected officials or affiliated offices, at any time following execution of the Agreement. However, should any County official recruit Plaintiff for County employment, acceptance of such

---

[3] Appellant argues that the bankruptcy court improperly considered this document in its decision. It is unclear from the record before us, however, whether the Appellant contends that the bankruptcy court improperly received the complaint into evidence or whether the bankruptcy court erred in receiving testimony about the complaint without it being received into evidence. No transcript of the proceeding has been prepared or submitted as part of the record on appeal. Because it is the Appellant's duty to provide us with an adequate record on which to consider her argument, we can only conclude that the bankruptcy court did not err in this respect. See Rush v. Rush (In re Rush), 237 B.R. 473, 476 (B.A.P. 8th Cir. 1999) (citing Malone v. Payeur (In re Payeur), 22 B.R. 516, 519 (B.A.P. 1st Cir. 1982); Burkhart v. FDIC (In re Burkhart), 84 B.R. 658, 660 (B.A.P. 9th Cir. 1988); Bank of Honolulu v. Anderson (In re Anderson), 69 B.R. 109 (B.A.P. 9th Cir. 1986)).

an offer of employment shall not be deemed as a violation of the
Agreement.

However, the settlement agreement unambiguously provides that the proceeds are to be allocated among damages for emotional distress, back pay, and attorney's fees. Thus, no portion is attributable to the above-quoted paragraphs.

Appellant further contends that more weight should be given to the third hiring decision or that the court should divide the proceeds into four parts because four deputies were hired in total. The settlement agreement is ambiguous as to the method for allocating the proceeds among the separate incidents of discrimination. Therefore, determining the intent of the parties is a question of fact reviewed only for clear error. See Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999). The bankruptcy court's decision to allocate the proceeds paid to Appellant equally among the three hiring decisions was reasonable given the lack of evidence suggesting another method of allocation. Accordingly, we must uphold the bankruptcy court's allocation.

## CONCLUSION

Based on the foregoing, we hereby affirm the decision of the bankruptcy court in its entirety.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT

6