**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

No. 00-50589

---

In the Matter of DAVID LEE DAVIS,

Debtor.

---

SAFEWAY MANAGING GENERAL AGENCY, INC. for
STATE AND COUNTY MUTUAL FIRE INSURANCE CO.,

Appellant,

v.

RANDOLPH OSHEROW, Trustee; JAMES BAKER, Individually and as
Temporary Guardian of the ESTATE OF DAVID BAKER,
an Incapacitated Person; and LELE BAKER,

Appellees.

---

Appeal from the United States District Court
for the Western District of Texas
Austin Division

June 7, 2001

Before GARWOOD, PARKER, and DENNIS, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Appellant Safeway Managing General Agency, Inc., appeals the district court's judgment affirming the bankruptcy court's judgment declaring that a cause of action pursuant to *G.A. Stowers Furniture*

1

*Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved), against Appellant exists in the property of the bankruptcy estate pursuant to 11 U.S.C. § 541. Because we conclude that such cause of action does not exist in the property of the estate, we REVERSE and RENDER.

I.

This action arose out of the following stipulated facts. David Lee Davis, Debtor, was a driver involved in an automobile accident on January 21, 1994, that allegedly resulted in injuries to Appellee David Baker, who was a passenger in Davis's vehicle. At the time of the accident, Davis was insured by an automobile liability policy issued to him by Appellant on August 17, 1993. The policy provided liability limits of $20,035.00 per person and aggregate bodily injury limits of $40,035.00 per accident.

On July 8, 1994, Appellee James Baker, as next friend of David Baker, brought suit against Davis in the State District Court of Travis County, Texas. The claims in this suit were later amended to include claims of James Baker, individually and as temporary guardian of David Baker, as well as claims of Appellee Lele Baker, individually, and the suit was transferred to the Travis County Probate Court. Davis was represented by attorney Ken Richey, who was retained and paid by Appellant. By letter dated April 5, 1994, Appellant received an offer of settlement from the Bakers, but never responded.

On October 20, 1994, Appellant intervened in the State action and interpleaded the entire bodily injury limits available under its policy covering Davis. On November 3, 1994, the Bakers answered Appellant's intervention and counterclaimed against Appellant by asserting a cause of action pursuant to *Stowers* for negligently failing to settle claims within the policy limits. The Bakers' claims against Davis were later transferred to the Probate Court. In addition to the Bakers, the State action named as defendants four other claimants who allegedly suffered injuries arising out of the accident and whose claims exceeded the amount of insurance proceeds available under Appellant's policy. All of these competing claims were resolved before Davis filed his bankruptcy petition--three by settlement and one by default judgment.

On July 9, 1996, the trial date for the State action, Davis filed a Chapter 7 bankruptcy petition and Appellee Randolph Osherow was appointed as trustee. The Bakers moved the bankruptcy court to modify the automatic stay to permit the State action to proceed to a trial and the bankruptcy court modified the stay on October 2, 1996. On November 6, 1996, the bankruptcy court granted Davis his bankruptcy discharge pursuant to 11 U.S.C. § 727. The Bakers did not file a complaint or obtain an exception of their claims from the discharge order. However, on September 8, 1997, the Bakers filed a proof of claim in the bankruptcy case alleging an

3

unsecured, non-priority claim in the amount of $2,300,000.00 for alleged damages arising as a result of the accident.

The State action was tried on or about January 26, 1998, and a verdict was rendered in favor of Davis. The trial court granted a new trial and the action was retried on or about April 26, 1999. The retrial resulted in a verdict against Davis in the amount of $550,000.00. The trial court entered judgment against Davis in the amount of $828,234.42 on July 27, 1999. A motion for new trial was filed on August 25, 1999, and was denied on October 8, 1999.

After the first verdict, but before the retrial of the State action, Appellant on February 1, 1999, filed an adversary action in the bankruptcy court against the trustee and the Bakers seeking a declaratory judgment that no *Stowers* claim exists or will exist in the bankruptcy estate against Appellant for its conduct relating to the State action. The adversary action was tried by the bankruptcy court on stipulated facts and the bankruptcy court on February 22, 2000, issued an opinion and a final judgment declaring that a *Stowers* cause of action exists and is owned by the bankruptcy estate. Appellant appealed this judgment to the district court, which on June 16, 2000, affirmed the bankruptcy court without any analysis or reasons. Appellant then timely appealed the district court's judgment to this court on July 10, 2000.

4

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(d) and 1291. We review the trial court's findings of fact for clear error and conclusions of law *de novo*. *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000). The principal issue raised by this appeal is whether or not the bankruptcy court correctly declared that a *Stowers* cause of action accrued and exists in the bankruptcy estate. Therefore, our review requires the examination of the bankruptcy court's judgment under Texas law. *See State Farm Life Ins. Co. v. Swift (In re Swift)*, 129 F.3d 792, 795 (5th Cir. 1997).

Appellant contends that the bankruptcy court erred in ruling that a *Stowers* claim could exist in favor of the estate. Appellant specifically argues that under Texas law, a *Stowers* claim does not accrue until a judgment is rendered in excess of policy limits, and that in this action, because such judgment was not rendered until three years after Davis filed for bankruptcy protection, the estate has no *Stowers* claim. Moreover, Appellant argues that Davis's bankruptcy discharge nullified any potential for a *Stowers* claim or any injury that gave rise to a *Stowers* claim. Finally, Appellant argues that the bankruptcy court's decision was based, at least in part, on factual findings made outside the stipulated facts and beyond the scope of judicial notice.

We agree with Appellant that there is no *Stowers* claim in the

5

bankruptcy estate. The Texas Supreme Court has held that "a *Stowers* cause of action does not accrue until the *judgment* in the underlying case becomes final." *Street v. Hon. Second Ct. of Apps.*, 756 S.W.2d 299, 301 (Tex. 1988) (emphasis added); *Linkenhoger v. Am. Fid. & Cas. Co.*, 260 S.W.2d 884, 887 (Tex. 1953) ("The [insured] could not have maintained this present suit until such time as his liability and the extent thereof had been determined by a final judgment."), *overruled in part on other grounds*, *Hernandez v. Great Am. Ins. Co. of New York*, 464 S.W.2d 91, 93 (Tex. 1971), *Street*, 756 S.W.2d at 301. Since there was no judgment against Davis until July 27, 1999, more than three years after the commencement of his bankruptcy case, Davis could not have had a *Stowers* claim against Appellant before that date because "the tort was not complete." *Linkenhoger*, 260 S.W.2d at 887. Because Davis had no such claim as of the commencement of his bankruptcy case, such claim also could not have been included in his estate. *See* 11 U.S.C. § 541(a)(1) ("[Property of the estate includes] all legal or equitable interests of the debtor as of the commencement of the [debtor's bankruptcy] case.").

Moreover, Davis's bankruptcy discharge more than two years prior to the judgment in the State action negates the existence of a *Stowers* claim. A *Stowers* claim requires both an insurer's negligent failure to settle, *and* subsequent harm or legal injury to the insured. *Foremost County Mut. Ins. Co. v. Home Indem. Co.*, 897

6

F.2d 754, 757 (5th Cir. 1990). Even assuming facts suggesting that Appellant negligently failed to settle the Bakers' claims, Davis has not suffered any legal injury cognizable under a *Stowers* cause of action because he is, due to the discharge, no longer personally liable to the Bakers for any judgment in excess of the amount covered by the insurance policy. *See* 11 U.S.C. § 524; *cf. Foremost*, 897 F.2d at 758 (holding that a covenant not to execute releasing the insured from all legal obligations to pay resulted in no injury to the insured). We agree with Appellees that filing bankruptcy is costly and burdensome, but we cannot conclude, under these facts, that a *Stowers* cause of action exists in the property of the bankruptcy estate.

Because our conclusion sufficiently disposes of the merits of this appeal and Appellant's claim for declaratory judgment, we express no opinion on Appellant's argument that the bankruptcy court clearly erred by finding facts outside the stipulated facts for trial and beyond the scope of judicial notice. Therefore, the judgment of the district court is REVERSED and judgment is RENDERED in favor of Appellant.

GARWOOD, Circuit Judge, concurring.


I concur, with these additional observations. A *Stowers* claim exists to protect the insured against liability on a judgment in excess of policy limits where that has resulted from the insurer's negligent refusal to accept an offer to settle the suit for an amount within the policy limits. Plainly, the purpose of the *Stowers* doctrine is to thus protect the *insured*—*not* the plaintiff in the underlying suit (or the insured's other creditors) as such. *See Whatley v. City of Dallas*, 758 S.W.2d 301, 307 (Tex. App. Dallas, 1988, writ denied) (plaintiff in underlying suit "has no standing to assert" *Stowers* claim). Cf. *Hernandez v. Great American Ins. Co. of N.Y.*, 464 S.W.2d 91, 94 (Tex. 1971) ("the *Stowers* action lies to repair the harm to the insured"). Moreover, the protection afforded the insured is against real, meaningful—not simply theoretical—liability. *Foremost County Mut. Ins. Co. v. Home Indem. Co.*, 897 F.2d 754, 757-58 (5th Cir. 1990). Here, the insurance company had interpleaded its policy limits into the state court proceeding over a year before the minor insured filed his bankruptcy. The insured received his still unobjected to discharge in bankruptcy well before not only the excess judgment in question but indeed before any trial in the underlying suit and some ten months before any claim was even filed in the bankruptcy by the plaintiff in that suit. Appellee contends, and it is essentially

8

undisputed, that the minor insured, at and after his bankruptcy filing, had total assets—apart from his putative *Stowers* claim—of a value of less than $600, consisting entirely of exempt tangible personal property, had no income and was unemployed. In these circumstances, it is evident that the insured's discharge has at least the same effect as the covenant not to execute in *Foremost*.[1]

However, there may be situations where, unlike the present case, the insured in bankruptcy has, at all relevant times, non-exempt assets well in excess of the total of all debts *other than* that represented by the outstanding judgment in the underlying suit giving rise to the putative *Stowers* claim, but the total of that judgment and all the other debts exceeds the value of the insured's assets.[2] In such a scenario it is certainly open to reasonable argument that notwithstanding that the insured receives a discharge in a bankruptcy commenced before the judgment in the underlying suit, the insured has in substance used a portion of his non-exempt assets to *pay* the excess judgment and should have a *Stowers* claim to that extent at least. No such scenario is now before us,

---

[1]And, as the bankruptcy was filed long before the judgment in the underlying suit there was no *Stowers* claim when the bankruptcy commenced and hence such a claim could not be included within the insured's bankruptcy estate. 11 U.S.C. § 541 (a)(1).

[2]This could conceivably be the case even in an involuntary bankruptcy commenced before the judgment in the underlying suit. *See* 11 U.S.C. §§ 303(b), 541 (a)(1). In that situation, it could not be reasonably argued that the insured created his own difficulty by voluntarily filing for bankruptcy before judgment in the underlying suit.

9

however.