**Vacated and Dismissed, and Opinion Filed August 27, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00863-CV

### MARY HARP SHANKLES, Appellant
### V.
### J. DON GORDON, HYNDS & GORDON P.C., AND
### DAVID N. MCNEES D/B/A LAW OFFICES OF DAVID N. MCNEES, Appellees

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-13-05746-E**

## MEMORANDUM OPINION

Before Justices Lang, Evans, and Schenck
Opinion by Justice Lang

This case involves a complicated web of claims, counterclaims, cross-claims, intervening claims, and bankruptcy proceedings, including adversary proceedings, that commenced in 2004.[1] All proceedings arose from the probate of Douglas Lee Shankles's (the decedent) will, disputes involving his widow, Mary Harp Shankles (Shankles), and claims Shankles made against her former legal counsel. The litigation worked its way through the various proceedings culminating

---

[1] These proceedings occurred in Grayson County Court at Law No. 1, cause no. 2004-72P (probate court), the 397th District Court, Grayson County, cause no. CV-11-0095 (district court), the United States Bankruptcy Court for the Eastern District of Texas (bankruptcy court), cause no. 11-43075-BTR (main bankruptcy case) and adversary no. 1104227 (adversary proceeding), and Dallas County Court at Law No. 5, cause no. CC-13-05746-E (county court).

in the county court's final judgment.[2]  We address those proceedings since the county court's decision is largely based upon what transpired in the other proceedings.

On appeal from the county court's judgment, Shankles raises four issues, arguing the county court erred when it: (1) dismissed her claims for breach of fiduciary duty under section 27.005 of the Texas Civil Practice and Remedies Code, which is referred to as the Texas Citizens Participation Act;[3] (2) dismissed her claims for breach of fiduciary duty under section 27.005 of the Texas Citizens Participation Act because she established a prima facie case for each essential element of her causes of action; (3) granted summary judgment dismissing her claims for professional negligence because there were genuine issues of material fact precluding summary judgment; and (4) awarded J. Don Gordon, Hynds & Gordon P.C., and David N. McNees d/b/a Law Offices of David N. McNees their attorneys' fees pursuant to section 27.009(a)(1) of the Texas Citizens Participation Act because it dismissed her claims for breach of fiduciary duty and breach of the implied duty of good faith and fair dealing.[4]  In their responses, Gordon and Hynds & Gordon, and McNees challenge Shankles's standing to bring her professional negligence, breach

---

[2] The final judgment consists of two documents: (1) the order granting motions to dismiss under Texas Citizens Participation Act; and (2) the order granting defendants' motions for summary judgment and defendants' motions to determine fees and costs.  The order granting motions to dismiss under Texas Citizens Participation Act dismissed Shankles's claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing.  The order granting defendants' motions for summary judgment and defendants' motions to determine fees and costs ordered that Shankles take nothing on her claims for professional negligence, and awarded the defendants attorneys' fees.  Dispositive orders need not appear in one document for a judgment to become final.  *See Azbill v. Dallas Cty. Child Protective Servs. Unit of Tex. Dep't of Human & Regulatory Servs.*, 860 S.W.2d 133, 137 (Tex. App.—Dallas 1993, no writ); *Radelow-Gitten Real Prop. Mgmt. v. Parmex Foods*, 735 S.W.2d 558, 560 (Tex. App..—Dallas 1987, writ ref'd n.r.w.).  Since there can be only one final judgment rendered in any cause, the two orders are construed as a single judgment.  TEX. R. CIV. P. 301; *see Port Distrib. Corp. v. Fritz Chem. Co.*, 775 S.W.2d 669, 670 (Tex. App.—Dallas 1989, writ dism'd by agr.).

[3] *See Citizens Participation Act*, 82nd Leg. R.S., ch. 341, §§ 1–2, 2011 Tex. Gen. Laws 961, 961–64 (codified at TEX. CIV. PRAC. & REM. CODE ANN. § 27.001–27.011) (section one states, "This Act may be cited as the Texas Citizens Participation Act.").  Also, the Texas Citizens Participation Act is sometimes referred to as an anti-SLAPP law–the acronym standing for strategic lawsuit against public participation.  *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 713 n.6 (Tex. 2016).

[4] In her brief, Shankles stated she "is not appealing from the dismissal of her causes of action for breach of the [implied] covenant of good faith and fair dealing in a special relationship."  Also, in her post-submission letter brief, Shankles stated she "abandoned her claims for breach of the implied [covenant] of good faith and fair dealing in the [county] court and such claims are not the subject of this appeal."  However, Shankles does challenge the county court's award of attorneys' fees under section 27.009(a)(1), which is based on the county court's dismissal of both her claims for breach of fiduciary duty and her claims for breach of the implied covenant of good faith and fair dealing under the Texas Citizens Participation Act.  Accordingly, we must address standing as to her claims for breach of the implied covenant of good faith and fair dealing.  As noted later, because Shankles has no standing to bring claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing, the trial court does not have jurisdiction to award attorneys' fees pursuant to section 27.009(a)(1).

–2–

of fiduciary duty, and breach of the implied covenant of good faith and fair dealing claims against them in the county court.[5]

We conclude Shankles does not have standing to bring her claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and professional negligence. The county court's order dismissing Shankles's claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing under the Texas Citizens Participation Act is vacated. Also, the county court's order granting Gordon and Hynds & Gordon's, and McNees's motions for summary judgment on Shankles's claims for professional negligence is vacated. The cause is dismissed for want of subject-matter jurisdiction.

## I. FACTUAL AND PROCEDURAL CONTEXT

Below, we describe separately the factual and procedural histories in the various courts in which proceedings involving this matter have taken place. For the most part, we describe the factual and procedural histories in chronological order. However, we note that the record on appeal contains only partial records of the proceedings that occurred in the probate court, district court, bankruptcy court, and county court, so we describe what transpired to the extent shown by the limited record.

The facts common to all proceedings show that in 1977 and 1978, the decedent acquired a total of 187 acres of real property located at 7782 Plainview Road, Sherman, Grayson County, Texas (187 acres). Shankles married the decedent in 1992. They did not have any children

---

[5] In their briefs on appeal, the parties argued standing only with respect to Shankles's professional negligence claims. However, we review standing as to all of her claims, including her breach of fiduciary duty claims and breach of the implied covenant of good faith and fair dealing claims, because standing is a component of a court's subject-matter jurisdiction. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Accordingly, this Court requested that the parties file supplemental letter briefs addressing whether Shankles had standing to bring the breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing claims. *See* TEX. R. APP. P. 42.3. All of the parties filed post-submission letter briefs as requested. As we previously noted, in her post-submission letter brief, Shankles claimed that she had abandoned her claims for breach of the implied covenant of good faith and fair dealing. Although Shankls does not challenge on appeal the actual dismissal of her claims for breach of the implied covenant of good faith and fair dealing under the Texas Citizens Participation Act, she does challenge the county court's award of attorneys' fees, which were based on the dismissal of her claims for both breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing pursuant to that act. Accordingly, we must also address Shankles's standing with respect to her claims for breach of the implied covenant of good faith and fair dealing.

together, but the decedent had five children from a previous marriage. Although the decedent and Shankles lived on the 187 acres during their marriage, it was at all times the decedent's separate property. In 2003, the decedent was diagnosed with cancer. He died on January 14, 2004.

## A. Probate Proceedings

On January 23, 2004, Shankles retained McNees to probate the decedent's will. Then, on February 4, 2004, McNees filed an application to probate the decedent's will. In December 2006, Shankles retained Gordon and his law firm, Hynds & Gordon, in addition to McNees, to represent her in the probate matter. The probate case of that will was contested by the decedent's children until October 10, 2008, when the parties announced to the probate court that they reached a settlement. On October 13, 2008, the probate court signed an order memorializing the parties' agreement pursuant to Rule 11.[6] Meanwhile, the parties worked to prepare a detailed, written settlement agreement. On December 12, 2008, the probate court issued an order admitting to probate a 1993 will.[7] Shankles obtained separate counsel, David Stagner, to review the terms of the proposed written settlement agreement. After his review, Shankles decided to go forward with the settlement agreement. Finally, on August 14, 2009, Shankles and the decedent's children signed a written settlement agreement (2009 settlement agreement), which specified, in part, that it was retroactively effective as of October 9, 2008. Also, in the 2009 settlement agreement, the parties agreed to the admission of the 1993 will for probate with certain agreed revisions to its terms, including that Shankles would receive ownership of the 187 acres effective as of January 14, 2004, which was the day of the decedent's death.[8] On August 21, 2009, in accordance with

---

[6] *See* TEX. R. CIV. P. 11 (agreements to be in writing).

[7] Shankles offered three wills for probate that were alleged to have been made by the decedent after the 1993 will. One of those wills was purported to have been signed by the decedent on the day of his death. That will was later found to be forged and fraudulent by the bankruptcy court because Shankles signed it for the decedent, the notary was not present, the date of the will was incorrect, and it was not clear when the witnesses signed it.

[8] Later, the bankruptcy court found that Shankles's 2009 settlement agreement, including the 2009 distribution deed, was "an agreement to back date the effectiveness of the economic interest." However, the bankruptcy court also found that "the fact that the parties agreed to back date the effectiveness of the economic interest d[id] not change the date of her accrual for purposes of 11 U[.]S[.]C[.] [s]ection 5223(p)."

–4–

the 2009 settlement agreement, the 187 acres was conveyed by the executrix of the estate to Shankles through a "distribution deed" (2009 distribution deed) that was also made effective retroactively to January 14, 2004. Shankles would later claim all of this 187 acres as her "homestead" as of January 14, 2004.

Gordon, Hynds & Gordon, and McNees originally represented Shankles in the will contest action on a contingency fee basis. However, Shankles did not have any liquid assets with which to pay her attorneys. As a result, Gordon, Hynds & Gordon, and McNees requested that Shankles execute promissory notes secured by 87[9] of the 187 acres for repayment of their fees. On August 14, 2009, Shankles executed two separate promissory notes (2009 promissory notes). Under the terms of the 2009 promissory notes, the principal amount Shankles agreed to pay to Hynds & Gordon was $221,910.68 (the first promissory note) and the amount payable to McNees was $212,204.62 (the second promissory note). According to the terms of the 2009 promissory notes, the principal amount was due on the earlier date of either the sale of the 87 acres securing the note or August 14, 2010. Also, Shankles executed an affidavit, disclaiming a homestead interest in the 87 acres and stating that property was used as pasture.

### B. District Court Proceedings

In 2011, Hynds & Gordon filed suit against Shankles to recover on the first promissory note. The suit alleged Shankles was in default on the first promissory note and owed it the full principal of the note, $221,910.68. Also, it sought "foreclosure of [Hynds & Gordon's] security interest in the collateral." On July 1, 2011, McNees filed a petition for intervention, alleging Shankles was in default of the second promissory note and she owed him the full principal of $212,204.62. McNees also sought foreclosure of his security interest in the 87 acres specified in

---

[9] In the record, the amount of land securing the promissory notes is also referred to as "approximately 80 acres." We will refer to the amount of property securing the note as "87 acres."

the deed of trust securing Shankles's promissory note. On July 2, 2011, Shankles filed her first amended counterclaims against Hynds & Gordon and third-party petition against Gordon and Tohnie E. Hynds, alleging breach of fiduciary duty, violations of the Texas Deceptive Trade Practices Act, and professional negligence. On September 21, 2011, Shankles filed a counterclaim against McNees, alleging claims for breach of fiduciary duty and professional negligence. As to the counterclaims and third-party claims for breach of fiduciary duty and professional negligence, Shankles alleged: (1) when they "caused and instructed" her to waive her homestead rights, they breached their fiduciary duties "by placing [their] own financial interest above that of [their] client[, Shankles]"; and (2) Gordon, Hynds & Gordon, and McNees "drafted or accepted a Deed on property distributed to [Shankles] which does not convey marketable title to her" and "[f]urther litigation [would] likely be required to cure the title defect created by [their] [professional] negligence."

### C. Bankruptcy Proceedings

#### 1. Chapter 11 Proceedings

On October 5, 2011, Shankles filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.[10] On December 7, 2011, the district court case was removed to the bankruptcy court as an adversary proceeding. On February 15, 2012, Hynds & Gordon and McNees filed separate proofs of claim in the bankruptcy case for the sums due on the 2009 promissory notes. On January 24, 2012, Hynds & Gordon filed its amended objections to Shankles's real property exemption and on January 25, 2012, McNees filed its amended objections on the same basis in the adversary proceeding.[11] Both Hynds & Gordon and McNees objected to Shankles's real property exemption on the following bases: (1) Shankles, as a single person, was

---

[10] Pursuant to Chapter 11, debtors typically attempt to file a "plan" proposing payment of their debts. *See* 11 U.S.C. § 1121.

[11] Hynds & Gordon's and McNees's amended objections are not included in the record on appeal. In their post-submission letter briefs on standing, they state that they filed their amended objections on January 24 and 25, 2012. Shankles does not dispute these filing dates.

entitled to exempt only 100 acres as a homestead under Texas law; (2) Shankles was bound by her representation in her affidavit that 87 acres of the 187 acres were not her homestead; and (3) under section 522(p)(1) of the bankruptcy code Shankles's homestead exemption was "capped" at $146,450.[12] On February 29, 2012, based on the trustee's motion, the bankruptcy court signed an order converting Shankles's bankruptcy to a proceeding under Chapter 7.[13] The trustee's motion was agreed to by Shankles, Hynds & Gordon, McNees and other creditors. Also, in the adversary proceeding, the trustee objected to Shankles's claimed homestead exemption on the grounds that it was "capped" under section 522(p)(1) of the bankruptcy code.

## 2. Chapter 7 Proceedings

On May 29, 2012, the bankruptcy court held a hearing in the adversary proceeding on the creditors' and Chapter 7 Trustee's objections to Shankles's claim that the 187 acres was exempt from her creditors under the homestead exemption. *See* 11 U.S.C. § 522; TEX. PROP. CODE ANN. § 41.002(b)(1) (West 2014). After the parties closed, the bankruptcy court dictated several findings of fact and conclusions of law into the record.[14] One finding of fact was that Shankles claimed the value of her homestead was $1.1 million. Also, the bankruptcy court concluded, that Shankles was not entitled to the exemption she claimed and her exemption was "capped" at $146,450.[15] On June 7, 2012, the bankruptcy court signed a written order that: (1) overruled Hynds

---

[12] Although their objections are not in the record on appeal, during the hearing on those objections, the bankruptcy court recited on the record the basis on which they objected.

[13] *See* 11 U.S.C. § 1112 (conversion or dismissal). Under Chapter 7 of the Bankruptcy Code, the process of liquidation of a debtor's assets typically occurs. A trustee typically takes charge of a debtor's assets. *See* 11 U.S.C. §§ 701–727.

[14] *See* FED. R. BANKR. P. 7052 (applying to adversary proceedings Federal Rule of Civil Procedure 52, which states, in part, the court's "findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of a decision filed by the court.").

[15] Specifically, the bankruptcy court concluded:

> [Shankles] did not have an economic interest in the homestead property when she signed the settlement agreement. She acquired one as a result of the settlement agreement. And the fact that the parties agreed to back date the effectiveness of the economic interest does not change the date of her actual accrual for purposes of 11 U[.]S[.]C[.] [s]ection 522(p).

> The [Bankruptcy] Court also notes [its] concern with the possibility that by allowing that provision [in the settlement agreement] to determine when [Shankles] acquired an interest in [the] property, we would be effectively creating a way for parties to contract around the 1,215 day statutory period.

& Gordon's and McNees's objections that under Texas law Shankles was entitled to exempt only 100 acres of property as homestead and that she was estopped from asserting her homestead exemption based on her prior representation disclaiming 87 acres of the 187 acres as her homestead; and (2) sustained the Chapter 7 Trustee's, Hynds & Gordon's, and McNees's objections that the value of Shankles's exemption in the 187 acres was limited to $146,450 under section 522(p)(1) of the bankruptcy code.

On August 5, 2012, Shankles filed objections to Hynds & Gordon's and McNees's proofs of claim in the main bankruptcy case, arguing, inter alia, they breached their fiduciary duties to Shankles and the proofs of claims were secured by invalid and unenforceable liens. Meanwhile, on August 8, 2012, the Chapter 7 Trustee replaced Shankles as the real party in interest in the adversary proceeding. On September 24, 2012, the bankruptcy court signed a memorandum opinion respecting the adversary proceeding, which included a recitation of the factual and procedural background of the case that incorporated many of the oral findings of fact, and an order denying Shankles's motion for reconsideration. Shankles appealed to the United States Court of Appeals for the Fifth Circuit, which affirmed the bankruptcy court's order. *Weisbart v. Shankles (In re Shankles)*, 554 F. App'x 300 (5th Cir. 2014) (per curiam). On October 15, 2012, the bankruptcy court consolidated Shankles's objections to the proofs of claim, which were filed in the main bankruptcy case with Hynds & Gordon's suit originally filed in the district court, now designated as an adversary proceeding.

Adding another dimension to the controversies, on October 4, 2013, Shankles filed suit against Gordon, Hynds & Gordon, and McNees, as well as others, in the county court. As a result, Hynds & Gordon and McNees each filed motions to enjoin Shankles's county court litigation in

---

For all of the foregoing reasons, the [Bankruptcy] Court concludes that [the] [s]ection 522(p) cap applies.

the bankruptcy court. On December 16, 2013, the bankruptcy court held a hearing on those motions, and on December 17, 2013, in two separate orders, it denied those motions.

On September 24, 2014, the bankruptcy court signed an order approving a "settlement and compromise agreement" between the Chapter 7 Trustee, Hynds & Gordon, Gordon, Hynds, McNees and Shankles for "the purpose of settling the adversary proceeding and Shankles['s] objections." In that agreement, the parties stated that the parties "desire[d] to settle *the claims that are property of the bankruptcy estate that were asserted, or which could have been asserted, in the [adversary proceeding] and the Shankles Objections* without prejudice to the rights of any of them to pursue any claims, rights, objections or other positions which were not asserted, and could not have been asserted, in the [adversary proceeding] or the Shankles Objections." [Emphasis added.] However, as to Shankles's lawsuit in county court, paragraph I of the settlement and compromise agreement specified:

> Notwithstanding anything contained in this agreement, [Shankles] and [Hynds & Gordon, Hynds, Gordon, and McNees] are specifically not waiving or giving a release herein of whatever claims they may have in the Dallas County Lawsuit. [Shankles] and [Hynds & Gordon, Hynds, Gordon, and McNees] disagree as to the effect, if any, that this settlement may have on their respective rights in the Dallas County Lawsuit. Neither [Shankles] nor [Hynds & Gordon, Hynds, Gordon, and McNees] waive, relinquish, impair, or give up their rights to argue their respective positions on any such issues. [Shankles] and [Hynds & Gordon, Hynds, Gordon, and McNees] specifically reserve all of their respective rights to argue their respective positions in the Dallas County Lawsuit.

Finally, as part of the settlement and compromise agreement, the Chapter 7 Trustee released "any and all claims, . . . whether known or unknown, . . . that are or were property of the bankruptcy estate which were asserted or could have been asserted . . . including but not limited to . . . causes of action for legal malpractice, breach of fiduciary duty[,] and deceptive trade practices."

On October 10, 2014, the bankruptcy court signed an order on the joint motion to dismiss the adversary proceeding filed by the Chapter 7 Trustee, Hynds & Gordon, McNees and Shankles,

–9–

granting the motion, dismissing all of the claims in the adversary proceeding with prejudice, and ordering the clerk of the court to "close" the adversary proceeding. The main bankruptcy case was closed and the Chapter 7 Trustee discharged from further duties on August 29, 2017.[16]

### D. County Court Proceedings

As indicated above, on October 4, 2013, Shankles filed her original petition in the county court against Gordon, Hynds & Gordon, and McNees, alleging the following claims: (1) professional negligence; (2) breach of fiduciary duty; and (3) civil conspiracy. On January 16, 2014, Gordon and Hynds & Gordon filed their first amended answer, plea to the jurisdiction, and Rule 13 motion for the imposition of sanctions.[17] The record reflects that McNees filed an answer to the county court lawsuit as well as a plea to the jurisdiction and a motion for imposition of Rule 13 sanctions. The record does not show that Gordon, Hynds & Gordon, or McNees requested a hearing on or that the county court ruled on their pleas to the jurisdiction or their motions for the imposition of Rule 13 sanctions.

On January 20, 2014, Shankles filed her second amended petition against Gordon, Hynds & Gordon, and McNees, alleging claims for professional negligence, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing.[18] With repesct to her claims for professional negligence, Shankles alleged that Gordon, Hynds & Gordon, and McNees "each failed to properly represent [Shankles] and protect [Shankles's] interests in the settlement of the Probate Litigation because the January 14, 2004 'effective date' of the 2009 Distribution Deed has been determined to be invalid, ineffective, and unenforceable." As to her claims for breach of

---

[16] The bankruptcy court's order closing the main bankruptcy case is not in the record on appeal. In her post-submission letter brief on standing, Shankles states that her "[main] bankruptcy case was closed and [the Chapter 7 Trustee] discharged from further duties on August 29, 2017." Gordon, Hynds & Gordon, and McNees do not dispute this fact.

[17] *See* TEX. R. APP. P. 13 (effect of signing of pleadings, motions, and other papers; sanctions).

[18] In the text of her claim for breach of the implied covenant of good faith and fair dealing, Shankles references a claim for breach of contract, stating, "By reason of the foregoing, [Shankles] has been damaged as a direct and proximate result of [Gordon's, Hynds & Gordon's, and McNees's] breach of contract and the implied covenant of good faith and fair dealing contained therein." However, neither the parties nor the county court treated this case as including a claim for breach of contract.

fiduciary duty, she alleged that Gordon, Hynds & Gordon, and McNees breached their fiduciary duties when they "directly and unequivocally challenged and contested [Shankles's] Texas rural homestead exemption . . ., the enforceability and validity of the January 14, 2004 'Effective Date' of the 2009 Distribution Deed, and the date on which [Shankles] acquired an economic interest in the Homestead Property." Further, with respect to her claims for breach of the implied covenant of good faith and fair dealing, Shankles alleged that Gordon, Hynds & Gordon, and McNees breached their duties "when they took [] actions to deprive [Shankles] of the Homestead Property or her Texas homestead exemption for such property by challenging and contesting the validity and enforceability of the effective date of the 2009 Distribution Deed."

On January 21, 2014, Gordon and Hynds & Gordon filed their second amended motion to dismiss under the Texas Citizens Participation Act, and on January 22, 2014, McNees filed his amended motion to dismiss under the same act. Both motions sought dismissal of Shankles's claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing.

On October 22, 2014, the county court signed an order granting Gordon and Hynds & Gordon's, and McNees's motions to dismiss under the Texas Citizens Participation Act. The effect of that order was to dismiss with prejudice Shankles's claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing. In that order, the county court ordered that Gordon and Hynds & Gordon's, and McNees's motions for costs, fees, and expenses under section 27.009(a)(1) of the Texas Citizens Participation Act were granted and the amounts would be determined at a later date. Shankles appealed that order to this Court. On June 1, 2015, this Court dismissed Shankles's appeal of the county court's order granting the motion to dismiss for lack of jurisdiction. We concluded that the county court's order did not dispose of Shankles's claims for professional negligence and remanded the case to the county court for further

–11–

proceedings. *See Shankles v. Gordon*, No. 05-14-01444-CV, 2015 WL 3454429 (Tex. App.—Dallas June 1, 2015, no pet.) (mem. op.).

On April 5, 2016, Gordon and Hynds & Gordon filed their first supplemental answer, generally denying Shankles's allegations and asserting as affirmative defenses res judicata, collateral estoppel, judicial estoppel, and lack of standing. Then, on April 15, 2016, Gordon and Gordon & Hynds filed a motion for traditional summary judgment on the basis that: (1) the county court lacked subject-matter jurisdiction because Shankles lacked standing to bring her professional negligence claims; (2) they established they were entitled to summary judgment on their the affirmative defenses of res judicata and statute of limitations; and (3) the element of causation in Shankles's claim for professional negligence is negated as a matter of law. Also, on April 5, 2016, Gordon and Hynds & Gordon filed a motion seeking an award of fees and costs under section 27.009(a)(1) based on the county court's dismissal of Shankles's claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing under the Texas Citizens Participation Act.

On April 15, 2016, McNees filed a separate motion for traditional summary judgment on the basis that: (1) Shankles's professional negligence claim was a compulsory counterclaim to McNees's claims for fees in the bankruptcy court so her claim is barred; (2) his affirmative defenses of res judicata and statute of limitations barred Shankles's claims; and (3) the undisputed evidence shows that Shankles cannot prevail as to the elements of breach of duty and proximate cause on her claim for professional negligence. On May 3, 2016, McNees filed a motion seeking an award of fees and costs under section 27.009(a)(1) based on the county court's dismissal of Shankles's breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing claims under the Texas Citizens Participation Act.

–12–

On May 27, 2016, Shankles filed two separate responses to the motions for summary judgment. In both of her responses, Shankles claimed that she had standing to bring her professional negligence claims because they accrued in June 2012 after the bankruptcy case was converted to a Chapter 7 proceeding and the trustee was appointed so they were not property of the bankruptcy estate. In the alternative, Shankles argued that, even if her professional negligence claims were the property of the bankruptcy estate, she had standing because: (1) the trustee was aware of the county court suit and did not object, and her recovery in the suit may have to be turned over to the bankruptcy estate; and (2) all property not administered in the bankruptcy case reverted back to her at the closing of the bankruptcy case.

On June 3, 2016, the county court held a hearing on the motions for summary judgment. On June 20, 2016, the county court signed an order granting Gordon and Hynds & Gordon's, and McNees's: (1) motions for summary judgment, ordering that Shankles take nothing on her claims for professional negligence; and (2) motions for fees and costs pursuant to section 27.009(a)(1) based on the dismissal of her claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing awarding Gordon and Hynds & Gordon their attorneys' fees in the amount of $69,348.70 and McNees his attorneys' fees in the amount of $32,590.50.

## II. STANDING

In their briefs and post-submission letter briefs, Gordon and Hynds & Gordon, and McNees argue that Shankles did not have standing to bring her claims for professional negligence, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing against them in the county court. They claim that Shankles's claims became the property of the bankruptcy estate and only the trustee could pursue them. [19] Shankles agrees with Gordon and Hynds &

---

[19] Gordon and Hynds & Gordon argue the trial court properly granted summary judgment, in part, because they proved their affirmative defense of lack of standing. However, standing, a component of a court's subject-matter jurisdiction, cannot be conceded or waived. Therefore, it is not an affirmative defense. *See Tex. Air Control Bd.*, 852 S.W.2d at 446 (standing component of court's subject-matter jurisdiction); *6200 GP*

–13–

Gordon's, and McNees's argument to the extent that a bankrupt debtor's professional negligence claims against the debtor's attorneys become the property of the bankruptcy estate "if those []claims arose or accrued prior to the date of the debtor's filing." However, Shankles maintains that her claims arose or accrued after her Chapter 11 proceeding was converted to Chapter 7 and are not part of her bankruptcy estate.

## A. Standard of Review

The question of standing is a legal question regarding subject-matter jurisdiction, so an appellate court conducts a de novo review of a trial court's ruling. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Mazon Assocs., Inc. v. Comerica Bank*, 195 S.W.3d 800, 803 (Tex. App.—Dallas 2006, no pet.); *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 256 (Tex. App.—Dallas 2005, no pet.). If the record presents a standing issue the parties have failed to raise, courts must do so sua sponte. *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 591 (Tex. 2013); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993); *St. John Missionary Church v. Flakes*, 547 S.W.3d 311, 316 (Tex. App.—Dallas 2018, pet. filed) (en banc) (noting one issue supreme court has clearly and unequivocally directed appellate courts to consider sua sponte is subject-matter jurisdiction).

## B. Applicable Law

### 1. Standing

Standing is a component of a court's subject-matter jurisdiction. *See Tex. Air Control Bd.*, 852 S.W.2d at 446; *Nauslar*, 170 S.W.3d at 248. Standing to sue can be predicated upon either statutory or common-law authority. *See Williams v. Lara*, 52 S.W.3d 171, 178–79 (Tex. 2001); *Nauslar*, 170 S.W.3d at 252.

---

*L.L.C. v. Multi Serv. Corp.*, No. 05-16-01491-CV, 2018 WL 3154594, at *3 (Tex. App.—Dallas June 28, 2018, no pet. h.) (mem. op.) (noting that "while standing is a jurisdictional issue, lack of capacity is an affirmative defense"); *In re E.C.*, No. 02-13-00413-CV, 2014 WL 3891641, *1 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.) (standing cannot be conferred by consent or waiver).

The general rules of standing apply unless statutory authority for standing exists. *See Williams*, 52 S.W.3d at 178; *Nauslar*, 170 S.W.3d at 252. As a necessary component of a court's subject-matter jurisdiction, standing cannot be waived and can be raised for the first time on appeal. *See Tex. Air Control Bd.*, 852 S.W.2d at 445–46; *Mazon*, 195 S.W.3d at 803.

To have standing, the pleader bears the burden of alleging facts that affirmatively demonstrate the court's jurisdiction to hear the case. *See Tex. Air Control Bd.*, 852 S.W.2d at 446; *Mazon*, 195 S.W.3d at 803. However, when standing is challenged, the plaintiff has the burden to prove facts that affirmatively show the plaintiff's standing to bring the suit. *See Bray v. Fenves*, No. 06-15-00075-CV, 2016 WL 3083539, at *7 (Tex. App.—Texarkana Mar. 24, 2016, pet. denied) (mem. op.) (affirming judgment granting plea to jurisdiction and noting appellants had burden to plead and, when challenged, to prove facts that affirmatively showed their standing to bring the suit); *see also Jay Kay Bear Ltd. v. Martin*, No. 04-14-00579-CV, 2015 WL 6736776, at *4 (Tex. App.—San Antonio Nov. 4, 2015, pet. denied) (mem. op.) (addressing whether appellant had standing to appeal and noting when standing challenged on appeal, appellant bears burden of making prima facie showing it holds legally cognizable interest that is prejudiced or injuriously affected by trial court's judgment).

Whether considering the standing of one plaintiff or many, with the notable exception of class actions, the court must analyze the standing of each individual plaintiff to bring each individual claim he alleges. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 152 (Tex. 2012). This principle flows from two sources. *See Heckman*, 369 S.W.3d at 152. First, a plaintiff must demonstrate that the court has jurisdiction over and the plaintiff has standing to bring each of his claims. *See Heckman*, 369 S.W.3d at 152–53. The court must dismiss only those claims over which it lacks jurisdiction. *See Heckman*, 369 S.W.3d at 153. Second, a plaintiff must demonstrate that he, himself, has standing to present his claims. *See Heckman*, 369 S.W.3d at 153. This means

the court must assess standing plaintiff-by-plaintiff and claim-by-claim. *See Heckman*, 369 S.W.3d at 153.

A party's lack of standing deprives the court of subject-matter jurisdiction and renders any trial court action void. *See In re Russell*, 321 S.W.3d 846, 856 (Tex. App.—Fort Worth 2010, orig. proceeding [mand. denied]). The denial of a claim on the merits is different from the dismissal of a claim for want of jurisdiction. *See DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 307 (Tex. 2008). The absence of subject-matter jurisdiction may be raised in a motion for summary judgment. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). However, a court does not render judgment that a plaintiff takes nothing, as it would if the plaintiff's claims failed on the merits. *See DaimlerChrysler*, 252 S.W.3d at 307. Instead, the court must dismiss for want of jurisdiction. *See Heckman*, 369 S.W.3d at 153; *DaimlerChrysler*, 252 S.W.3d at 307. The denial of a claim on the merits is not an alternative to dismissal for want of jurisdiction merely because the ultimate result is the same. *See DaimlerChrysler*, 252 S.W.3d at 307.

## 2. Property of the Bankruptcy Estate

Section 541 of the bankruptcy code broadly defines "property of the estate" as "all . . . property, wherever located and by whomever held." 11 U.S.C. § 541(a); *see also Burgess v. Sikes (In re Burgess)*, 438 F.3d 493, 496 (5th Cir. 2006) (en banc). Subsection (1) specifies that property of the estate includes "[a]ll legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see also Burgess*, 438 F.3d at 496. The scope of section 541 is broad, bringing into the estate all of the debtor's legal and equitable interests "wherever located and by whomever held." 11 U.S.C. § 541(a)(1); *see also Burgess*, 438 F.3d at 496; *State Farm Life Ins. v. Swift (In re Swift)*, 129 F.3d 792, 795 (5th Cir. 1997). Property rights in legal causes of action include not only the causes of action themselves, but also any appellate

rights related to those causes. *See Croft v. Lowry (In re Croft)*, 737 F.3d 372, 375 (5th Cir. 2013) (per curiam). However, the bankruptcy code also provides a temporal limitation: property of the estate is determined at "[t]he commencement of the case." 11 U.S.C. § 541(a)(1); *see also Burgess*, 438 F.3d at 496. The case is commenced and the estate created when the bankruptcy petition is filed. *Burgess*, 438 F.3d at 496. Also, any claim acquired after commencement of the bankruptcy proceeding, but before conversion to Chapter 7, becomes the property of the bankruptcy estate. *See Store Chan Depumpo L.L.P. v. Thrasher*, No. 05-14-00967-CV, 2016 WL 147294, at *4 (Tex. App.—Dallas Jan. 13, 2016, no pet.) (mem. op.). The bankruptcy trustee is the real party in interest with respect to claims falling within the bankruptcy estate and has exclusive standing to assert claims that fall within the bankruptcy estate. 11 U.S.C. § 323; *see also, e.g., United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014) (discussing undisclosed claims); *Croft*, 737 F.3d at 375; *Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999).

While federal law determines what property interests of the debtor are the property of the bankruptcy estate, the nature and existence of the debtor's right to the property are determined by state law. *See Butner v. United States*, 440 U.S. 48, 54–55 (1979); *Title Max v. Northington (In re Northington)*, 876 F.3d 1302, 1310 (11th Cir. 2017); *Tidewater Fin. Co. v. Moffett (In re Moffett)*, 356 F.3d 518, 521 (4th Cir. 2004). To determine whether a debtor had a property interest in the causes of action at the time the debtor filed for bankruptcy, courts must determine when the debtor's causes of action accrued under state law. *See TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 524 (5th Cir. 2014); *Swift*, 129 F.3d at 795.

The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another, a cause of action has accrued. *See Swift*, 129 F.3d at 795 (citing *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 191 S.W.2d 716, 721 (Tex. 1946)); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (cause of action accrues when wrongful act causes an

–17–

injury, regardless of when plaintiff learns of that injury or whether resulting damages have yet to occur). Courts must be careful to extract accrual principles only and not principles of discovery and tolling. *See Swift*, 129 F.3d at 796 n.18. The dates of accrual and the start of the running of the statute of limitations may vary greatly and a cause of action can accrue for ownership purposes before the statute of limitations has begun to run. *See Swift*, 129 F.3d at 796, 798.

When determining when a cause of action accrued, the focus is on the moment the injury occurred. *See Swift*, 129 F.3d at 798. "A person suffers injury from faulty professional advice when the advice is taken." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997); *see also Murphy v. Mullin, Hoard & Brown L.L.P.*, 168 S.W.3d 288, 291 (Tex. App.—Dallas 2005, no pet.); *JC Project Mgmt. Servs., Inc. v. Kitchens*, No. 12-17-00130-CV, 2018 WL 3203437, at *2 (Tex. App.—Tyler June 29, 2018, no pet. h.) (mem. op.). In a professional negligence or legal malpractice case, the attorney's conduct must raise only a risk of harm to the client's legally protected interest for the tort to accrue. *See JC Project Mgmt.*, 2018 WL 3203437, at *2. For breach of fiduciary duty claims, an injury occurs at the moment of the breach. *See Suter v. Univ. of Tex. at San Antonio*, 495 Fed. App'x 506, 510 (5th Cir. 2012); *Leigh v. Weiner*, 679 S.W.2d 46, 48–49 (Tex. App.—Houston [14th Dist.] 1984, no writ). A cause of action for breach of the implied covenant of good faith and fair dealing accrues when the injury-producing event occurs. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515 (Tex. 1998) (discussing accrual of claim for breach of duty of good faith and fair dealing when insurer denies coverage and applying that reasoning to negligence claims).

### C. Application of the Law to the Facts

Initially, we note that Shankles's standing was challenged both in the trial court and on appeal. Although Shankles addressed standing in her responses to the motions for summary judgment and in her brief on appeal, her analysis of standing is devoid of authority, references to

evidence, and reasoning. In her post-submission letter brief addressing her standing with respect to her claims for breach of fiduciary duty, Shankles provides a few citations to legal authority, but does not provide references to record evidence. Shankles did not meet her burden. However, even if she had met her burden, the record shows that Shankles's claims for professional negligence, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing all accrued before she filed for Chapter 11 bankruptcy protection or, at the latest, before her bankruptcy proceeding was converted to a Chapter 7 proceeding. Accordingly, we address Shankles's standing to bring each individual claim that she alleged. *See Heckman*, 369 S.W.3d at 152 (court must analyze standing of each individual plaintiff to bring each individual claim he alleges).

### 1. Professional Negligence Claims

First, we address standing with respect to Shankles's professional negligence claims. Shankles maintains that her professional negligence claims are not part of her bankruptcy estate because they arose or accrued after her Chapter 11 bankruptcy was converted to a Chapter 7 proceeding, so she had standing to assert those claims on her own. Gordon and Hynds & Gordon contend that: (1) Shankles's professional negligence claims accrued pre-petition or, at the latest, pre-conversion to Chapter 7, because she brought the counterclaims against them in the district court suit before filing her bankruptcy petition; and (2) in the alternative, they argue that the professional negligence claims were pre-petition claims because they accrued in August 2009 when Shankles signed the 2009 settlement agreement and accepted the "back dated" 2009 distribution deed respecting the 187 acres regardless of when she allegedly suffered damages. McNees argues that: (1) Shankles's professional negligence claims accrued pre-petition or, at the latest, pre-conversion, because she brought the counterclaims for professional negligence in the

–19–

district court suit before filing her bankruptcy petition; and (2) in the alternative, the professional negligence claims accrued when they concluded the underlying will contest in probate court.

The record shows Shankles asserted professional negligence claims against Gordon, Hynds & Gordon, and McNees twice. First, in her counterclaims and third-party claims for professional negligence in the district court case filed on July 1, 2011. Then, later she asserted claims for professional negligence in the county court case filed on October 4, 2013. In the district court, Shankles alleged that Gordon, Hynds & Gordon, and McNees "either drafted or accepted a Deed on property distributed to [Shankles] which does not convey marketable title to her." She claimed that "[f]urther litigation [would] likely be required to cure the title defect created by [their] [professional] negligence." In the county court, Shankles alleged that Gordon, Hynds & Gordon, and McNees "each failed to properly represent [Shankles] and protect [Shankles's] interests in the settlement of the Probate Litigation because the January 14, 2004 'effective date' of the 2009 Distribution Deed has been determined to be invalid, ineffective, and unenforceable."

We must determine when Shankles's causes of action for professional negligence accrued for purposes of ownership relative to the bankruptcy. *See Swift*, 129 F.3d at 798. Accordingly, we focus on the moment the injury occurred. *See Swift*, 129 F.3d at 798. Shankles claims that she was injured by Gordon's, Hynds & Gordon's, and McNees's allegedly faulty professional advice with respect to the 2009 settlement agreement and the 2009 distribution deed in the probate court. That advice was given and taken before Shankles filed for Chapter 11 bankruptcy protection. *See Murphy*, 964 S.W.2d at 270 (person suffers injury from faulty professional advice when advice is "taken"); *Murphy*, 168 S.W.3d at 291; *JC Project Mgmt.*, 2018 WL 3203427, at *2. Accordingly, we conclude that any injury sufficient to give rise to Shankles's claims for professional negligence occurred before she filed for relief under Chapter 11, i.e., pre-petition, so the bankruptcy trustee

was the real party in interest and had exclusive standing to assert the professional negligence claims. *See* 11 U.S.C. 541(a)(1); *Burgess*, 438 F.3d at 496.

## 2. Breach of Fiduciary Duty Claims

Second, we address standing with respect to Shankles's breach of fiduciary duty claims. Shankles maintains that her claims for breach of fiduciary duty accrued after she filed for bankruptcy when Hynds & Gordon and McNees objected to her homestead exemption in the bankruptcy court. [20] Also, she claims the Chapter 7 bankruptcy estate does not include any assets she acquired after filing for bankruptcy and she did not suffer any "economic injury" until the bankruptcy court sustained Hynds & Gordon's and McNees's objections to her homestead exemption, which occurred after her bankruptcy was converted to a Chapter 7 proceeding. Gordon and Hynds & Gordon, and McNees maintain that Shankles's causes of action accrued, at the latest, when they filed their objections to Shankles's homestead exemption which occurred before her bankruptcy was converted to a Chapter 7 proceeding.

Shankles asserted counterclaims for breach of fiduciary duty in the district court and claims for breach of fiduciary duty in the county court against Gordon, Hynds & Gordon, and McNees. In the district court, in her first amended counterclaim and third-party petition, Shankles claimed that they "caused and instructed" her to waive her homestead rights, they breached their fiduciary duties "by placing [their] own financial interest above that of [their] client[, Shankles]." In the county court, she alleged that as licensed attorneys, Gordon, Hynds & Gordon, and McNees "breached one or more of the fiduciary duties they owed to [her] as attorneys licensed to practice law in the State of Texas." She alleged that they breached their fiduciary duties when they "directly and unequivocally challenged and contested [Shankles's] Texas rural homestead exemption . . .,

---

[20] In her post-submission letter brief, she argued "[Shankles] complained that [Gordon, Hynds & Gordon, and McNees] breached their fiduciary duties to her when, in attempting to collect their contested legal fees, they successfully challenged in a bankruptcy proceeding the validity and effectiveness of certain of the provisions of the deed for her homestead property, provisions which [Gordon, Hynds & Gordon, and McNees] drafted or approved previously as her attorneys representing her in the transactions whereby she received the deed."

–21–

the enforceability and validity of the January 14, 2004 'Effective Date' of the 2009 Distribution Deed, and the date on which [Shankles] acquired an economic interest in the Homestead Property." Shankles claimed that her damages included, inter alia, the loss of her Texas homestead exemption.[21]

Again, we must determine when Shankles's causes of action for breach of fiduciary duty accrued for purposes of ownership in the bankruptcy, which requires us to focus on the moment the injury occurred. *See Swift*, 129 F.3d at 798. The injury that Shankles claims resulted from Gordon's, Hynds & Gordon's, and McNees's alleged breach of fiduciary duty stems from one or more of the following events: (1) the 2009 settlement agreement between Shankles and the decedent's children in the probate court proceedings where they agreed to "back date" her ownership interest in the 187 acres and the 2009 distribution deed that "back dated" its effective date; (2) her 2009 promissory notes, which were secured by 87 of the 187 acres for debts owed to her attorneys and a disclaimer of a homestead interest in those 87 acres; (3) the proofs of claim Hynds & Gordon and McNees filed in the Chapter 11 bankruptcy proceeding; or (4) the objections to Shankles's homestead exemption that Hynds & Gordon and McNees filed in the bankruptcy proceeding. The first two of these events occurred before Shankles filed for bankruptcy protection under Chapter 11, and the second two events occurred before her bankruptcy was converted to a Chapter 7 proceeding. *See Suter*, 495 Fed. App'x at 510 (for breach of fiduciary duty claims, injury occurs at moment of breach); *Leigh*, 679 S.W.2d at 48–49. Also, the record shows that the trustee objected to Shankles's claim that the 187 acres was exempt from her creditors' under the

---

[21] In her post-submission letter brief, Shankles argued her "breach of fiduciary duty claims did not arise until after her bankruptcy filing because [she] did not suffer any economic injury until [Hynds & Gordon and McNees] object[ed] and the bankruptcy court's rul[ed]." In support of her argument, Shankles relies on the Texas Supreme Court's reasoning in *Atkins v. Crosland*, 417 S.W.2d 150 (Tex. 1967) and this Court's opinion in *Philips v. Giles*, 620 S.W.2d 750 (Tex. Civ. App.—Dallas 1981, no writ), which followed and applied *Atkins*. She claims these cases stand for the proposition that an injury resulting from erroneous advice does not occur until the economic injury or damages occur. However, in *Swift*, the United States Court of Appeals for the Fifth Circuit expressly distinguished *Atkins* and disagreed with *Philips* because Swift's claims against State Farm were for negligence and breach of fiduciary for the legally flawed IRA which was found in bankruptcy not to be exempt. *Swift*, 129 F.3d at 797, 798 & n. 33, 799 & n.40, 800 n.43.

homestead exemption. Accordingly, we conclude that any injury sufficient to give rise to Shankles's claims for breach of fiduciary duty accrued pre-petition or at the latest pre-conversion, so in either case, the bankruptcy trustee was the real party in interest and had exclusive standing to assert the breach of fiduciary duty claims. *See Store Chan Depumpo*, 2016 WL 147294, at \*4 (any claim acquired after commencement of bankruptcy proceeding, but before conversion to Chapter 7 becomes property of bankruptcy estate).

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing Claims

Third, we address standing with respect to Shankles's breach of the implied covenant of good faith and fair dealing claims. Shankles does not address standing with respect to these claims.[22] Gordon, Hynds & Gordon, and McNees maintain that Shankles's claims for breach of the implied covenant of good faith and fair dealing accrued at the same time her claims for breach of fiduciary duty accrued.

We have already concluded that any injury sufficient to give rise to Shankles's claims for breach of fiduciary duty accrued pre-petition or at the latest pre-conversion, so in either case, the bankruptcy trustee was the real party in interest and had exclusive standing to assert the breach of fiduciary duty claims. Like a claim for breach of fiduciary duty, a claim for breach of the implied covenant of good faith and fair dealing accrues when the injury-producing event occurs. *See Johnson & Higgins*, 962 S.W.2d at 515 (cause of action for breach of good faith and fair dealing accrues when injury-producing event occurs). Accordingly, we conclude that any injury sufficient to give rise to Shankles's claims for breach of the implied covenant of good faith and fair dealing occurred pre-petition or, at the latest, pre-conversion, so the bankruptcy trustee was the real party in interest and had exclusive standing to assert the breach of the implied covenant of good faith and fair dealing claims. *See Store Chan Depumpo*, 2016 WL 147294, at \*4 (any claim acquired

---

[22] *Supra* n.4 & 5.

after commencement of bankruptcy proceeding, but before conversion to Chapter 7, becomes property of bankruptcy estate).

#### 4. Bankruptcy Trustee Did Not Abandon the Claims

Shankles argues that the Chapter 7 Trustee was aware of this litigation and did not object or seek to be substituted as the plaintiff, and all property not administered in a bankruptcy proceeding by the Chapter 7 Trustee reverts back to the debtor at the closing of the case pursuant to section 554(c) of the bankruptcy code. McNees responds that Shankles does not have standing because the Chapter 7 Trustee did not abandon the claims permitting her to pursue them and the claims could not have reverted back to her under section 554(c) of the bankruptcy code because she filed her lawsuit in the county court before the bankruptcy proceedings were closed.

We disagree with Shankles. Once an asset becomes a part of the estate, the debtor's rights in the asset are extinguished unless the trustee abandons the asset pursuant to section 554 of the United State Bankruptcy Code. *See* 11 U.S.C. § 554.[23] There is nothing in the record to show that the Chapter 7 Trustee abandoned the claims for professional negligence, breach of fiduciary duty, or breach of the implied covenant of good faith and fair dealing against Gordon, Hynds & Gordon, or McNees. Further, in the settlement and compromise agreement, the Chapter 7 Trustee released any and all claims that were the property of the bankruptcy estate that were asserted or could have been asserted in the adversary proceeding.

---

[23] Section 554 of the Bankruptcy Code states:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554.

### III. ATTORNEYS' FEES

In issue four, Shankles argues the county court erred when it awarded Gordon, Hynds & Gordon, and McNees their attorneys' fees because: (1) dismissal of her claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing was error; and (2) Gordon, Hynds & Gordon, and McNees failed to establish their attorneys' fees were reasonable, necessary, actually incurred, or segregated as to the services provided and the tasks for which attorneys' fees were recoverable. We have already concluded that Shankles did not have standing to bring her claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing. The parties do not address how Shankles's lack of standing affects the county court's award of attorneys' fees under the Texas Citizens Participation Act. Generally, when a court lacks subject-matter jurisdiction over a claim, the only action the court can take is to dismiss the claim. *See Am. Motorist Ins. v. Fodge*, 63 S.W.3d 801, 805 (Tex. 2001) ("If a claim is not within a court's jurisdiction, and the impediment to jurisdiction cannot be removed, then it must be dismissed."); *First State Bank of Cent. Tex. v. Lakeway Reg'l Med. Ctr.*, No. 03-13-00058-CV, 2014 WL 709221, at *5 (Tex. App.—Austin Feb. 20, 2014, pet. denied) (mem. op.); *see also DaimlerChrysler*, 252 S.W.3d at 307 (denial of claim on the merits not an alternative to dismissal for want of jurisdiction merely because ultimate result is same).

Under the plain terms of the Texas Citizens Participation Act, a trial court is required to determine whether the nonmovant presented clear and convincing evidence of "each essential element of the claim in question." *See* CIV. PRAC. & REM. § 27.005(c); *State Fair v. Riggs & Ray, P.C.*, No. 05-15-000973-CV, 2016 WL 4131824, at *4 (Tex. App.—Dallas Aug. 2, 2016, no pet.) (mem. op.). This is an inherently different inquiry from whether the movant presented evidence to show the trial court possessed subject-matter jurisdiction. *See State Fair*, 2016 WL 4131824, at *4.

Section 27.009(a)(1) of the Texas Citizens Participation Act provides that "(a) if a court orders dismissal of a legal action under this chapter, the court shall award to the moving party: (1) court costs, reasonable attorneys' fees, and other expenses incurred in defending against the legal action as justice and equity may require." CIV. PRAC. & REM. § 27.009(a)(1). The plain language of this statute requires the trial court to award attorneys' fees when it dismisses the legal action under the Texas Citizens Participation Act and does not address an award of attorneys' fees when the case is dismissed for lack of subject-matter jurisdiction. *See* CIV. PRAC. & REM. § 27.009(a)(1); *Ankrom v. Dallas Cowboys Football Club, Ltd.*, 900 S.W.2d 75, 81 (Tex. App.—Dallas 1995, writ denied) (trial court did not have jurisdiction to award attorneys' fees based on claims because trial court did not have jurisdiction over claims); *First State Bank*, 2014 WL 709221, at *5 (Texas Rule of Civil Procedure 677 does not contemplate award of attorneys' fees when trial court, without regard to merits, dismisses garnishment proceeding for lack of subject-matter jurisdiction, but appellate court sua sponte remanded case to trial court, which had jurisdiction to award attorneys' fees as sanctions, for consideration of whether Rule 13 sanctions were warranted); *Angell v. City of Garland*, No. 05-89-001174-CV, 1991 WL 158667, at *4 (Tex. App.—Dallas Aug. 14, 1991, writ dism'd w.o.j.) (not designated for publication) (Commission not entitled to attorneys' fees under section 143.015 of the Texas Local Government Code, which concerns appeals of commission decision to the district court and states court may award attorneys' fees to "prevailing party," because trial court lacked jurisdiction over matter and had no discretionary authority to act except to dismiss cause); *cf. Castro v. McNabb*, 319 S.W.3d 721, 735–36 (Tex. App.—El Paso 2009, no pet.) (even though trial court did not have jurisdiction to make requested declaration, trial court properly exercised jurisdiction to award attorneys' fees under section 37.009 because judgment on merits is not prerequisite to award of attorneys' fees under Declaratory Judgments Act, which authorizes trial court to award attorneys' fees "[i]n any proceeding under the chapter").

Accordingly, we conclude that section 27.009(a)(1) does not provide for an award of attorneys' fees to Gordon, Hynds & Gordon, and McNees when Shankles's claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing are dismissed for lack of subject-matter jurisdiction. Because we have already concluded that Shankles did not have standing to bring her claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing, we need not address issue four.

## IV. CONCLUSION

Shankles does not have standing to bring her claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and professional negligence. The county court's order granting Gordon and Hynds & Gordon's, and McNees's motions to dismiss under Texas Citizens Participation Act and order granting Gordon and Hynds & Gordon's, and McNees's motions for summary judgment and motions to determine fees and costs are vacated.

We dismiss the cause for want of subject-matter jurisdiction.


/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE


160863F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MARY HARP SHANKLES, Appellant

No. 05-16-00863-CV     V.

J. DON GORDON, HYNDS & GORDON
P.C., DAVID N. MCNEES D/B/A LAW
OFFICES OF DAVID N. MCNEES,
Appellees

On Appeal from the County Court at Law
No. 5, Dallas County, Texas
Trial Court Cause No. CC-13-05746-E.
Opinion delivered by Justice Lang. Justices
Evans and Schenck participating.

In accordance with this Court's opinion of this date, the trial court's order granting appellees J. DON GORDON AND HYNDS & GORDON P.C.'s, AND DAVID N. MCNEES D/B/A LAW OFFICES OF DAVID N. MCNEES's motions to dismiss under the Texas Citizens Participation Act is **VACATED**.

Also, the trial court's order granting appellees J. DON GORDON AND HYNDS & GORDON P.C.'s, AND DAVID N. MCNEES D/B/A LAW OFFICES OF DAVID N. MCNEES's motions for summary judgment and motions to determine fees and costs is **VACATED**.

The appeal is **DISMISSED** for want of jurisdiction.

It is **ORDERED** that appellees J. DON GORDON, HYNDS & GORDON P.C., DAVID N. MCNEES D/B/A LAW OFFICES OF DAVID N. MCNEES recover their costs of this appeal from appellant MARY HARP SHANKLES.

Judgment entered this 27th day of August, 2018.